Whyte, J.
delivered the opinion of himself and Judge Pece.
This was an action of ejectment originally brought in the County Court of Smith County, at the November term thereof, in the year 1820. It was tried, May term, 1821, and verdict and judgment for the defendant. The plaintiff took an appeal to the Circuit Court of Smith County, October term, 1821, where it was continued from term to term, until October term, 1822, when it was tried; verdict and judgment were given in the Circuit Court for the defendant, from which the plaintiff took an appeal in the nature of a writ of error to this Court.
It appears by the record that upon the trial in the Circuit Court, an exception was taken by the plaintiff to the charge of the judge given by him to the 'jury. A motion for a new trial granted on that supposed erroneous charge, and the refusal of the judge to grant it, whereupon a bill of exceptions was tendered and signed, &c., &e., which exhibits the following case.
That the lessor of the plaintiff in support of the issue on his part deduced a regular chain of title from William Walton, the original grantee, to himself for the premises in the declaration mentioned, after -which the defendant, to support the issue on his part, offered to read a deed of conveyance from the Sheriff of Smith County to himself, dated 12th February, 1821, for lot No. 43, in the town of Carthage, purporting to have been made by virtue of a judgment and order of sale of Smith County Court, November term, 1819, the record of which states, that, at a court of pleas and quarter sessions for the County of Smith, on the second Monday of November, 1819, Joseph Bridges, constable, returned the following attachments here into court, in the words and figures following, to wit. The attachments are then copied verbatim; the first attachment is that of John Gordon v. William Justice for $ 18.8Q, granted by John Owen, a justice of the peace for Smith County, returnable before himself, dated 28th Sep *134 tember, 1819, and is in the common form; the record next notices that the attachment is indorsed thus : “ came to hand same day issued, and levied on one barrel whiskey and a number of other articles, consisting of household and kitchen furniture; also, one lot in the town of Carthage, No. 43, and one other whereon William Moper lives. John Bridges, Constable.”
“State of Tennessee, Smith County. Judgment is granted in favor of the plaintiff, for eighteen dollars and eighty cents, debt and interest, arid all lawful costs. Given under my hand and seal this 28th September, 1819.
“ J. Owen, J. P. (seal.”)
“ Execution issued to Joseph Bridges, 29th September, 1819.”
The record then goes on and states the second attachment verbatim, in common form like the first, which is that of John Hall, assignee of James Roberts v. William Justice, for the sum of $ 67, due by note from the 15th September, 1819 ; granted by William Flowers, Justice of the Peace, dated 28th September, 1819, returnable before himself or some other justice of the County of Smith.
The record then states that there is indorsed on the attachment, “ came to hand same day issued, and levied on lot No. 43, in the town of Carthage; also, one other, number not known. Joseph Bridges, Constable. Judgment is granted by me in favor of the plaintiff, for the sum of sixty-seven dollars principal, with interest from the 15th day of September, 1819, and all lawful costs. Given under my hand and seal, this 28th day of September, 1819..
“ William Flowees, J. P. (seal.”)
Next follows on the record ; “ On motion, it is ord'ered by the Court, that the said lots be sold to satisfy the plaintiff’s debts and costs,, and cost of these motions.” Upon which order, an order of sale issued in the words and figures following, to wit;
“ To the Sheriff of Smith County, greeting; whereas Joseph Bridges, Constable, made return to the justices of the County Court of Smith November term, 1819, on two attachments ”; then the parties are named, the sums in the attachments, and the substance of the constable’s returns as above stated, and the order of Court; it then goes on and says : “ These are therefore to command you to expose the said lots to public sale according to the statute in such cases made and provided, &c., &c., dated at office the second Monday in November, 1819, &c. Witnessed by J. Pickett, clerk of said court, and signed by him.” The record then states the following return ; “ came to hand same day issued, and advertised the within lot, No. 43, in the Carthage Gazette, at least 40 days before the day of sale, and advertised the same to be sold at the Court House in Carthage, on the 12th February, 1820, and I sold the same to John Owen for the sum of $ 50.6J cents ; said Owen being the best, last, and highest bidder became the purchaser for that sum.'
“William Goodall, Sheriff.”
*135 The reading of which deed and record was objected to by the plaintiff’s counsel, upon the ground that the County Court of Smith had no jurisdiction to render therein said judgment, and issue said order of sale; but the Court decided the said deed should be read, which opinion was excepted to by him. Plaintiff’s counsel also moved the Court to charge the jury that said deed of conveyance was void, because the Court of Smith County had no jurisdiction in the matter, which was refused by the judge, who charged that the deed was not void.
The correctness of the opinion of the judge upon the above deed and record form the principal question in this cause, and indeed the only question that need be noticed. It was very properly admitted in argument by the counsel on both sides that the judgment rendered by the County Court of Smith, however erroneous and voidable, would not affect the title of the defendant, a purchaser under it, but that the judgment was void because the Court had no jurisdiction in the matter ; that it did affect the title of the purchaser, and he could derive no right under it. Whether the judgment of the County Court,-upon these attachments, or, in other words, the order for the sale of the lots levied on by these' attachments, or the condemnation of the land, as it was termed in the argument, was, or was not authorized, depends upon the acts of Assembly cited by the bar. These Acts are, 1794, ch. 1, §§ 19, 20, 23, 55, and 56 ; 1786, ch. 14, §10 ; and 1815, ch. 20, §§ 1, 2, 3; upon these acts it is contended on the one side that no power is given to levy an attachment on land that is returnable before a justice of the, peace, or in a case that is cognizable before him. On the other side, it is contended that the land can as well be levied on, upon an attachment returnable before a justice of the peace, as it can upon one returnable before the Circuit or County Court; that there can be no doubt in the latter cases but that the lands may be levied on ; and that the same term being used in all the three cases where the power is given is strong to prove this. The 19th Section of 1794, ch. 1, which authorizes the attachment returnable before the Superior Court, says, the judge or justice, is empowered arid required to grant an attachment against the estate of such debtor. The same term “ estate ” is used in the 55th Section, where the attachment is returnable to the County Court; and in the 56th Section where the attachment is returnable before a justice of the peace, the same term “ estate” is also used.
We do not deem it essentially necessary to determine the point, whether, in a case within the cognizance of a justice of the peace, on an attachment returnable before him, land can be levied on, as the cause may be decided on another ground; yet it is not irrelevant or extra judicial to do so, as it must be apparent that if the land was not before the Court, it could not be affected by their judgment. It might also ’be admitted in examining this question that the attachment, though leviable on land when returnable to *136 the Circuit or County Court, a point on which we give no opinion, as it is not necessary, yet it does not follow that therefore it can be levied on land when returnable before a justice of the peace. The sections of the act are very different, authorizing the different attachments ; that on which the attachment returnable before a justice of the peace depends, being alone material for the present purpose, will be noticed. It is the 56th Section, and says, that any one justice of the peace, in cases where he has jurisdiction, may issue an original attachment against the estate of any absconding or absent debtor, &c., directed to the sheriff or any constable of the county; and the proceedings thereon shall be in a summary way, as on a warrant, and the defendant may replevy the goods attached, and either party may appeal, &c. Here, in the first part of the section, where the power is given to grant or issue an attachment, it says, it may issue against the estate. This is a right and privilege conferred upon a plaintiff which he had not before; it is a new case and the defendant’s side of it is not forgotten in its formation; his rights are also respected, and in the after part of the section he is authorized to replevy the goods attached. Now, can there be any doubt that the Legislature intended anything else than that the replevy should be commensurate to the levy, or that if real estate was levied on, the replevy should not extend to it. This construction would be against all principle and the analogies of law in other eases. It would be overturning the ground on which the freehold has stood in the favorable estimation of the law, from its earliest ages, and subjecting it to degradation. In the eye of the law, as well as in reality, in the affections of mankind, the freehold has been more valued, more sought after, and more favored, and more protected, than the personal estate, by the common law, and previous to the statute of Westminster, 2, 13 Edw. 1, the land was not subject to the payment or satisfaction of debts, between private citizens, except in one case only, and that was when debt was brought against an heir, on an obligation made by his ancestor; the profits of the land only and the personal estate could be reached by the process of the law for this purpose. This favoritism extended to the realty in preference of the personalty, is not, even at this day, lost sight of, but to a certain extent exists, and is engrafted into the laws of Tennessee by the Act of 1794, ch. 1, § 23, which directs that execution shall be levied on the goods and chattels of the defendant in tlie first instance, if any there be, and if none or not enough, then the deficiency upon the lands. Besides, the rules of construction of all instruments require that if any word or sentence in the instrument be doubtful, and it can be explained by other parts of the same instrument, that shall be the mode adopted. Now, if it be said that estate applies to the realty, and to the personalty, and to both, we admit it may do so according to the subject matter and the context of the instrument; and here, by these, its meaning is fixed to the personalty. *137 The levy on the land therefore in the present case was wholly unauthorized by law and a void act, and can confer no right.
But upon another ground this case is against the defendant independent of the point already noticed, which is given by the Acts of 1806 and 1815. These Acts give to the County Court a power and jurisdiction which it had not before, and could not, till then, exercise, — a power unknown to the common law and equally unknown to the acts of Assembly, creating and establishing the county courts of this State. Before 1786, the County Court had no power conferred upon them by law, to make an order directing the sheriff to dispose of the real estate levied on by a constable, under an execution by virtue of a judgment, rendered by a justice of the peace. This Act gave that power; how is it to be exercised ? It is believed that no proposition is better established than this, that when a statute directs a new act to be done in a certain case, or upon certain terms, or gives a new proceeding, and prescribes the manner and form of this proceeding, that in-such case the manner and form so prescribed by the statute must be' pursued; nothing can dispense with the mandate of the statute; whether the authority thus conferred be upon individuals or upon a court, it is the same thing; the exercise of the power is a summary proceeding, and the facts authorizing the proceeding must appear upon the face of the proceeding itself, and also that the directions of the statute have been pursued.
Now, let us see if upon this record of the County Court of Smith County, which is their proceeding in the matter, the case existed which the statute of 1786, ch. 14, § 10, required. The Act says, that when it shall so happen that an execution is in the hands of any constable, in consequence of any judgment from a justice of the peace, and there shall be no personal property-in his county whereon to levy such execution, then, and in such case, it shall be the duty of the constable to levy such execution on the real estate of the person against whom it issued, and make return of his proceedings to the next County Court; that an order of such Court may direct the sheriff of the county to dispose of such real estate, &c. The first fact or requisite is, “ that when an execution in the hands of a constable,” &c. Now, no part of this record shows that ever any execution was in the hands of Bridges, the constable. The indorsement on the attachment of Gordon states that an execution issued to Bridges, constable, but it does not state, nor does Bridges state, it came to his hands. This fact is wanting. But the execution must not only have been in his, the constable’s hands, but he must have levied it on the real estate of the defendant, Justice. This also does not appear to be done, and how could it, when it does not appear that he ever had it in his hands? Another fact is, that there shall be no personal property of the defendant in his county whereon to levy the execution. That also does not appear upon the face of the procéedings of the County Court. Had all the other facts appeared that do *138 not, and this been wanting, the proceedings of the Court would have been a nullity. This Court has decided this point again and again in the cases of tax sales.
On the attachment of John Hall, assignee of James Roberts, against Justice, no part of the case required by the Act of 1786 appears hut the judgment of the justice of the peace, no execution, no levy, nor a deficiency of personal property.
Secondly ; if the real estate was not before the Court pursuant to the Act of 1786, it remains to see whether it was brought before it by the Act of 1815, ch. 20, § 2, cited by defendant’s counsel as having that effect. That Act says, “ that in all cases where land may be levied upon by virtue of this Act, it shall be taken to the County or Circuit Court for condemnation as may be most convenient, and be conducted in the same way as other sheriff sales for land.” This Act, then, in terms, applies to those levies only that are made by virtue- of this Act, that is, by the first section and the third section. What are they ? Upon looking into the first section it will be found that the sole province of it is the extension of the provision of 1786, ch. 14, § 10, in favor of plaintiff to garnishees, and embraces three cases of garnishment, all and every of which cases must be founded..upon an execution issued by a justice of the peace against the property of the defendant, and be in the hands of the officer as a prerequisite or condition precedent to their existence; otherwise, these cases of garnishment under this Act cannot arise or be executed. The first case of garnishment is, when there is judgment against the garnishee upon a summons in writing, for money due from him to defendant, and for effects in his possession belonging to defendant, and upon this judgment against the garnishee there is an execution and levy by the officer. The second case is where the garnishee has failed to appear upon the summons, and conditional judgment is rendered against him for the default; and upon notice served upon him of this conditional judgment, at a second failure, and judgment confirmed, and execution thereon against garnishee himself, for plaintiff’s whole judgment and costs, levy is made.
The third case is that of a second garnishee, or of one who is discovered to be such upon the examination of the first garnishee. He is subjected in the same manner and under the same rules that the first garnishee is subjected, that is, by execution upon judgment rendered upon his garnishment under the terms of this Act. The third section is not to the point of the present case before the Court, and need not be further noticed.
From this review of the Act of 1815, ch. 20, the result is, that this Act, instead of showing that it aids the defendant’s case, and gives jurisdiction to the County Court of Smith, exhibits cases for condemnation, one remove beyond the case comprised in 1786, cases more complicated and requiring more terms in their formation, one of which terms runs through *139 all the cases under the Act, and that is, that an execution from a justice of the peace on a judgment against the original defendant should not only he in the officer’s hands, but that an execution also against the garnishee, upon a judgment rendered against the garnishee, should be in the officer’s hands and by him levied on the land. This levy is the levy spoken of in the second section of 1815, ch. 20, which authorizes the taking the land to the County or Circuit Court for condemnation.
Having thus briefly shown the purport of this Act of 1815, ch. 20, it would be an unnecessary waste of time to show further its inapplicability to the case before the Court by a recurrence to its facts and a comparison of them with the requisitions of the Act. It is at once apparent that none of the facts exist which the Act requires, to give the County Court of Smith, or any other court, power to condemn the land stated in the record and which they have affected to condemn.
The judgment of the Circuit Court must, therefore, be reversed, and the cause remanded for a new trial to be had therein agreeably to the principles of law as understood in this opinion.