Oajruthees, J.,
delivered the opinion of the court.
The coniplainant, as the brother, and only heir and distributee of Charles Williams, who died in Virginia, in 1819, claims title to a number of slaves now in the possession of, and claimed by, the defendants. The said Charles Williams, by his will, left to his widow all liis property for life, with certain conditions; and did not dispose of the remainder, as to-which he died intestate,as is contended by complainant. Hie defendants, who hold said property by purchase from, and under the will of the widow, insist that her right was absolute under the will of her husband, and that their- tibio from her is perfect.
The rights of the parties depend entirely upon the extent of the widow’s interest under the will. The difficulty in the case, arises from the peculiar and unusual provisions of the will. It is in these words:
“ I loan to my beloved wife, Martba Williams, tbe following property, to wit:” (sundry slaves,) “during ber natural life,” and all his other property, after paying debts. “The condition of the above loan is' such, that if the said Martha Williams should think proper to many, or dispose of this property in any manner whatever, so that Thomas Jones, Margaret Jones, Rebecca Andrews, Elizabeth Jones, nor neither of them, nor their heirs, shall never enjoy any of the above named property, nor money, nor have any thing to do with it, in any manner, whatever, then the - above loan to he *622 void, or else stand in full force and virtue. It is my desire that no misconstruction be laid on tbis my last will and testament, so as to deprive my wife, Martha 'Williams, of a bona fide title to the above named property and the increase thereof forever; provided, that she should manage it in such a manner that neither of the above mentioned ” persons, nor “neither of their heirs, shall never inherit any part of my estate. But if she should not dispose of this property so as to deprive” said persons, “nor their heirs, this loan to take effect.” He then appoints his wife executrix, and provides that there shall be no security required of her, nor any ap-praisement of the estate.
The widow before her death, sold some of the slaves to the prohibited persons, and by her will bequeathed •she balance of them, -and all the acquisitions, to the same persons or their children.
Now, the main question for decision is, whether the widow took a life estate only, or an absolute estate. If the former, the remainder being undisposed of, goes to the complainant as the only heir and distributee of the testator; but if the latter, the defendants who hold under her, have a perfect title, and must prevail in this suit.
The principles of law which govern the case are plain, and the only difficulty results from the confused and complicated provisions of the testament. Perhajos we would hazard but little in saying that one just like it lias never been seen before.
The most general rule in the construction of wills, is, that the intention of the testator must prevail, 10 Yerg., 30-29. To this leading rule, all others are not only subordinate, but auxiliary, except such as are founded «a public policy, and the necessity of sustaining estab- *623 lisbed principles of law; 3 Humphrey’s Eep., 536-631; 4 Humph., 210.
This intention is to be ascertained, first, from the particular words used; second, the context; and third, the general scope and purpose of the instrument.
According to these tests, it is very clear that two things were intended by the testator in the will before us: First, that the widow should only have a life-estate, if she made any disposition of the property favorable to certain relations of hers, therein named, or died without marrying, or making a disposition that would exclude them from taking it under the statutes of distributions, as her next of kin; that is, if she died intestate, not having previously sold the property. Secondly, it is clear, that he intended these proscribed relations should, in no event, get it. But, thirdly, it is very manifest, that he intended to give Iris widow the right and power to make an absolute disposition of the property, either by marrying, deed, or will. This seems to have been his most anxious desire and intention. He urges that idea in several clauses and aspects. And, for fear he might be misunderstood, as to the extent of the estate she was intended to have, and the power over the property he had given her, he reiterates his meaning in this remarkable and explicit sentence: “It is my desire, that no misconstruction be laid on this, my last will and testatment, so as to deprive my wife of a 'bona fide title to the above named property, and the increase thereof, forever.” But to this, he annexes a proviso, that it must be so “managed” that the proscribed persons “shall never inherit any part of it.” And if not so managed, then the “loan to take effect.” That is, she shall have a full power to dispose of the *624 fee simple by deed, gift, marriage or will, except to four persons, and in that event, her title shall be good and absolute; but if she fails to do this, or. permits these four persons to have any benefit, or dies, leaving them to “inherit,” as her next of kin, then her title is reduced to a life estate. Now, these conflicting intentions are all very palpable on the face of the will, and it must certainly be admitted, that his leading object was, to give his wife the most ample power over, and enjoyment of all his estate, (they being childless,) computable with the cherished purpose of excluding her hated relations.
There is no rule of law better settled in this State, than that a gift by deed or will for life, with a power of disposal in fee, vests the whole ■ estate in the first taker. Of this rule, Judge Turley remarks, in the case of Davis vs. Richardson, 10 Yer. 292, “that the question has been so elaborately investigated by this court in the case of Smith T. vs. Bell and wife, Mar. & Yer., 303, and in the case of David et als. vs. Bridgeman, et als., 2 Yer., 558; and so decided, further investigation would be useless.”
In the case of David vs. Bridgeman, the only difficulty seemed to arise out of the fact that, by the will of Sampson David, on which the contest arose, the power of disposal given to his wife, Martha, was to be exercised “at her death.” That, like this, was a controversy between the distributees of tbn testator and those of the widow, as no disposition was made in the will of the remainder; but it was claimed by testator’s distributees that it remained undisposed of, as Jhe widow made no will. The court decided this made no difference, and fully sustained that position by reason and authority. *625 Tbe principle is, that an unlimited power to dispose of the fee, whether exercised or not, determines the character of the estate by - converting the life estate into a fee; it being’ incompatible with the idea of a limited estate. This power renders the remainder too doubtful and uncertain to be recognized or protected by the law'. The express or implied reservation of it in such a case, is void, and it goes with the life estate.
The exclusion of particular persons from this absolute power, as in the case before us, does not affect the principle and prevent the application of the rule above laid down. It may have exceptions, but this is not one of them. Here the power is unlimited, both as to the quantity of estate and the mode of disposition, and the only restriction attempted to be imposed, is, the exclusion of certain designated individuals. This, we think, is inconsistent with the unlimited power of disposal, and cannot stand with it, being contradictory and in direct conflict. It follows, then, that the entire estate passed to Martha ’Williams, and that the title of defendants derived from her is perfect and unimpeachable, as against the complainant claiming as the representative and dis-tributee of Charles Williams.
This view of the case renders it unnecessary to give any opinion on the other point presented in argument, involving the power of the county court to grant administration in any case twenty years after the death of a testator or intestate .under the act of 1831, ch. 24, § 3, except in the case provided for in the act of 1835, ch. 86, § 3. We are not prepared to say that eases may not arise in which exceptions might be made to the provisions of that act, which would not be in consistent with the intention of the legislature, nor will *626 we say that this is not one of them. But upon this question we give no opinion, leaving it open for further discussion when a case shall arise which will render it necessary to decide it.
The decree of the chancellor dismissing’ the bill will ■be affirmed.