SMITH *et al. v.* REYNOLDS *et al.*

(*Knoxville,* September Term, 1938.)

Opinion filed November 25, 1938.

H. H. HAYNES, SR., of Bristol, for complainants.

SIMMONDS & BOWMAN, of Johnson City, and J. S. ASHWORTH, of Bristol, Va., for defendant and cross-complainant Mrs. Agnes K. St. John.

B. S. GORE, C. E. ST. JOHN, THOMAS S. CURTIN, ROBERT BURROW, JR., and HARRY HUDSON, all of Bristol, for defendants, the St. John heirs.

MR. JUSTICE CHAMBLISS delivered the opinion of the Court.

This is a bill filed by administrators with the will annexed of the estate of Dr. Matt B. St. John, praying for a construction of his will and direction in administration. Dr. St. John died in 1934, leaving a widow, but no children, and as his nearest blood kin two elderly sisters, both in the neighborhood of three score years and ten, a niece about twenty-five and a nephew older. The widow, Agnes Kerwin St. John, qualified as administratrix,

along with Dr. Nat Dulaney and W. F. Smith, who appear to have joined with her in the administration at her request. The administrators retained Judge H. H. HAYNES as counsel, and it soon developed that the will required judicial construction as to some of its provisions, and Judge HAYNES was authorized to file the bill for this purpose.

The will was holographic, written by Dr. St. John in April, 1933, and was found among his valuable papers after his death, and along with it was found a previous witnessed will, dated in 1930, but no question is made by any of the interested parties as to the authenticity of the holographic will, the only importance attaching to the previous will being the alleged significance of certain of its recitals as reflecting upon the intentions of the testator as to certain matters dealt with in the holographic will, to which reference will be made. All interested parties were made defendants. The one infant involved, Albert Hines, Jr., is represented by Thomas S. Curtin, as Guardian *ad Litem,* this infant being the child of a deceased sister.

The record discloses that the bill was filed upon the theory that the effect of the will was to give to the widow a life estate in all of the property of the testator, the prayer for construction being directed toward other questions, but, shortly after the filing of the bill, the widow having been advised that the limitation over was void and that she was entitled to take in fee, and her interests therefore appearing to be in this respect antagonistic, an order was entered permitting her to withdraw as a complainant and assume the position of a defendant, and she thereupon filed an answer and cross-bill setting

up her contention as above indicated. The will which is brief, reads as follows:

"I, Matt B. St. John, this April 12th, 1933, being of sound mind do hereby will and bequeath to my wife, Agnes Kerwin St. John, my entire estate with both real and personal property inclusive, except my medical library, which I leave to Dr. L. B. Snapp of Bristol, Tennessee.

"I contemplate a trip to South Carolina and make this before I go. Stipulation: if my niece, Margaret Kent, or Uncle Bill Dulaney or sister, Mrs. Blanche S. Reynolds or Eva Kite should need anything, Agnes Kerwin St. John shall give to them accordingly as to her ability and their needs.

"At Agnes Kerwin St. John's death this estate is by my wish returned to my nearest blood kin. This revokes previous will.

"[Signed]     Matt B. St. John

"Fult Smith or Irvin *Able* or Homer Jones can attest my signature."

Two principal matters were dealt with by the Courts below, and several others incidentally. One was as to the effect to be given the 'stipulation" found in the second clause, and the other and most important as to the effect of the alleged limitation over found in the third clause.

While varying somewhat in details, the substance of the opinions of the Chancellor and the Court of Appeals is to the effect that this stipulation is legally binding and enforcible, but that the amounts of payments to these ladies are subject to the conditions that might present themselves as to the ability of the widow to make payments, without unduly depriving herself of that adequate support which was evidently the primary purpose of the testator, and the needs of the named beneficiaries,

having in mind their resources and other means of support. The Court of Appeals was of opinion that the widow was constituted a trustee, in a sense, touching this matter.

The two courts concurred in holding that the absolute bequest made by the first clause of the will to the widow was converted into a life estate by a limitation over in the third clause. And that the remainder was not contingent, but vested as of the death of the testator.

Other matters incidentally dealt with related to the protection of the personal property passing under the will from loss or waste during the enjoyment of the life estate by the widow, and the payment of compensation to various attorneys in the cause.

As already indicated, there was an appeal from the decree of the Chancellor, and the case was reviewed and affirmed on the principal issue in the Court of Appeals, and petitions have been filed in this Court by different parties raising various questions, praying for writs of *certiorari* and a hearing here.

The principal issue, and one on the determination of which most other questions in large part rest, is as to whether the widow is given a fee or a life estate under her husband's will.

It is argued for the widow that it could not have been the intention of the testator to give to his wife a life estate merely, with the effect of restricting her to the income from the estate, since this would defeat the primary purposes of the testator, which were, undoubtedly, (1) the support in comfort of his wife and (2) affording her the means to care for the relatives for whom he felt responsibility, named in the second paragraph of the will. This argument for the widow is rested both upon

proven extraneous facts, particularly upon the present apparently inadequate available income from the estate, and upon the language of the will itself. For example, reference is made to the fact that the estate, after deduction of costs of administration, aggregates in value not more than $40,000, about one-half in real estate and about one-half in very low income bearing securities, and that the net income available for the widow's support will be scarcely $100 a month and the use of the home in which she resides, and that this is so largely less than the income which she and her husband, Dr. St. John, were accustomed to enjoy, that it could not have been his intention to so restrict her beneficial use of the property left her, it being apparent from the will itself, as well as from extraneous evidence, that his devotion to his wife and interest in her was very great, and that the will itself shows that her comfort was his primary purpose. And, as supporting this theory, the "stipulation" found in the second clause clearly indicates that the widow was to be in position with respect to the estate to use such portions of it as would enable her to meet such needs as might present themselves on behalf of the relatives referred to in this stipulation. (The record shows that the uncle, Bill Dulaney, predeceased testator).

Developing the facts further, with a view to arriving at the true intention of the testator, it appears that Dr. St. John had been a physician of high standing, enjoying a lucrative practice and was possessed of a valuable estate, estimated, since his death, at some $40,000. He and his wife had an annual income of more than $5,000, and lived in a home and in comfort and ease commensurate therewith. At the time of their marriage, in 1928, she was a successful business woman, with a salary of

$150 a month. It is plausibly argued that, if restricted to the comparatively small income from the estate above mentioned, subject to the upkeep expense of the home-place, she would be reduced to a scale of living far below that of her married life, and even below that to which she had previously been accustomed, and that compliance in any degree with the "stipulation" expressed in the will would be, of course, impossible. Thus, the wife of his affection, and the named relatives for whom he evinced a special sense of responsibility, would be deprived for the benefit of kin, not shown by the record to have been in need, or to have been the objects of his beneficial care.

■ ■  With this background in mind, we turn to an analysis of the will itself. In the first paragraph the testator, in clear and unequivocal terms, wills and bequeaths to his wife his "entire estate", and not content with these all embracing words, he adds, for emphasis, "with both real and personal property inclusive". He then adds an exception, leaving his medical library to Dr. Snapp. All counsel and courts agree that we have in this paragraph a clear and unequivocal devise of an absolute fee simple estate, this applying to both of the beneficiaries named. If the testator had in mind any other or further exception, or modification of the completeness of the bequest to his wife—the "entire estate"—here was the time and place for it, under well recognized rules of construction. We have here a case "where there is primarily a clear and certain devise of a fee, about which the testamentary intention is obvious and without ambiguity," as to which the rule is that, "the estate thus given will not be cut down or lessened by subsequent words which are ambiguous, or of doubtful meaning." A con-

struction of a subsequent provision which "collides with a plain devise in fee, and forces a change of its terms by cutting it down to a lesser estate" will not be given to words less clear and decisive. "We do not easily trade a certainty for a doubt". *Benson* v. *Corbin,* 145 N. Y., 351, 358, 40 N. E., 11, quoted with approval in *Meacham* v. *Graham,* 98 Tenn., 190, at page 219, 39 S. W., 12, at page 18. Or, to use the language of Mr. Justice WILKES in *Meacham* v. *Graham, supra,* at page 208, 39 S. W., at page 16, "No slight circumstance or ambiguous words will prevent the application of the general rule, but the reason and terms must be plain, strong, and decisive in order that subsequent provisions may be held to cut down a fee already given into a lesser estate. *Benson* v. *Corbin,* 145 N. Y., 351, 40 N. E., 11. And the great weight of authority is in accord with this holding". Selected cases are then cited from twelve states and, says Mr. Justice WILKES, "there are many others". These expressions are in harmony with our statutory rules (Code, sections 8091 and 7597), the first of these reading, "Every devise shall convey the entire estate of the testator in the lands, unless the contrary intent *plainly* appear from the words and context of the will", (italics ours); and Section 7597 reading, in part, "every grant or devise of real estate, or any interest therein, shall pass all the estate or interest of the grantor or devisor, unless the intent to pass a less estate or interest shall appear *by express terms,* or be *necessarily* implied in the terms of the instrument". Therefore, we pass to a consideration of subsequent clauses of the will before us with the burden resting heavily on the proponents of a life estate only.

In the second paragraph the testator evinces so-

licitude for certain aging sisters, an uncle, and an afflict-
ed niece. Having devised his "entire estate" to his wife,
and conscious that these near relatives would inherit
nothing from him, he "stipulates" with his wife that she
shall, should they "need anything", provide for them
out of the estate left her, "accordingly to her ability and
their needs". We are of opinion that, consistently with
that regard for and confidence in his wife which his be-
quest to her evinces, and the record otherwise shows he
entertained, he left to her the exercise of that judgment
which he might himself exercise while living in deter-
mining, from time to time, as the circumstances might
seem to require, the making of the disbursements thus
provided for. She was required to make them only when
and in such amounts as her judgment should dictate as
to the needs of the relatives, on the one hand, and her
ability, on the other. No criterion or standard is laid
down by the testator by which a legally enforcible obli-
gation could be gauged. While he stipulates that she
"shall" make expenditures for the purpose indicated,
he so hedges his requirement of her about as to leave the
"needs" and payments altogether to the wife, afford-
ing no basis for court intervention under the trust doc-
trine, which is not applied when the provision is, in ef-
fect, a request, or direction, that the legatee, or devisee,
do what is right in the premises, which is about what we
have here. 4 Kent., 305; *In re Gardner,* 140 N. Y., 122,
35 N. E., 439; *Boyle* v. *Boyle,* 152 Pa., 108, 25 A., 494,
34 Am. St. Rep., 629; *Durant* v. *Smith,* 159 Mass., 229, 34
N. E., 190. Her conscience, guided by her loyalty to her
deceased husband, is her guide.

But this provision of the will has, in our opinion,
determinative importance in another aspect. There is

not only no express restriction on what amount of his estate shall be thus devoted and applied, but by clear implication she is left empowered to dispose of any part, or all of it, at her election. This being so, coupling this provision with that in the first paragraph devising to her an estate in fee, the principle comes into play that where there is a devise of an estate in fee, coupled with an unlimited power of disposition, a subsequent limitation over is void. They are inconsistent and cannot stand together. *Smith* v. *Bell*, 8 Tenn. (Mart. & Y.), 302-305, 17 Am. Dec., 798. It is of the essence of a valid executory devise or bequest that it is not in the power of the first taker to defeat it by any act of his. *Bean* v. *Myers*, 41 Tenn. (1 Cold.), 226, 227. So, CATRON, J., said, in *Smith* v. *Bell, supra*, ''It is a settled principle, that a valid executory devise is such an one as cannot be defeated at the will and pleasure of the first taker . . . by sale or any other mode of alienation'', which includes a gift. Who has authority to question a gift by this widow to these old sisters of the testator of any portion of the bonds devised to her for their needs? If they were homeless, could she not convey to these old ladies the homeplace left to her by her husband?

''And'', says Mr. Justice WILKES, in the *Meacham Case*, ''this power of disposition may be given, not only in express words, but also by words necessarily implying such power,'' citing *Bradley* v. *Carnes*, 94 Tenn. (10 Pickle), 27, 31, 27 S. W., 1007, 45 Am. St. Rep., 696, and cases there cited; *Williams* v. *Jones*, 32 Tenn. (2 Swan.), 620; *Booker* v. *Booker*, 24 Tenn. (5 Hump.), 505, 511. And see our later case of *Eaton* v. *Nashville Trust Co.*, 145 Tenn., 575, 238 S. W., 865, on implied power of disposition, which is what we find in the will before us.

■ ■ Having reached the conclusion indicated, in construction of paragraphs one and two, it would seem hardly necessary to consider the language in paragraph three, relied on to establish a limitation over to a life estate, since if the first taker in fee be held to have been given by express terms, or implication, an unlimited power of disposition, the subsequent limitation over is void, in whatever terms. However, it is perhaps proper to add that, in our opinion, the language relied on in paragraph three is apparently ineffective to establish the limitation to a life estate, even though there should be found no adequate indication of a power of disposition in the first taker. We think this is so under the rule requiring that such a subsequent provision shall be expressed with at least equal clearness and explicitness to that devising an estate in fee in the first instance. This rule is thus well expressed in the opinion in *Meacham* v. *Graham, supra*:

"The rule is well settled that courts refuse to cut down an estate already granted in fee or absolutely, when the supposed terms of limitation are to be found in some subsequent portion of the will, and are not, in themselves, clear, unmistakable, and certain, so that there can be no doubt of the meaning and intention of the testator.

" 'If the expression in the will is doubtful, the doubt is resolved against the limitation and in favor of the absolute estate'," citing authorities.

"We do not easily trade a certainty for a doubt". *Benson* v. *Corbin, supra,* 40 N. E., 12.

This third paragraph reads, "At Agnes Kerwin St. John's death this estate is by my *wish returned* to my nearest blood kin". The clear implication is, from the use of the word "returned", that it had previously been

given and passed to her. And he uses the precatory word "wish", not will or command. The Court of Appeals was of opinion that the testator, being a layman, did not use the word in its technical, predicatory sense, but as synonymous with "will". But this is one of the very questions arising out of the effort to construe this clause about which opinions, as shown on this record, differ.

It may well be argued that the testator's purpose was merely to convey to his wife his wishes as to her disposition of the property which he was giving to her and which she had not used or disposed of, that she *return* it to his kin. It is not surprising that learned counsel should differ so radically as this record discloses in giving construction to this language in paragraph three. The members of the learned Court of Appeals themselves were unable to agree as to the meaning of this paragraph, which a majority only held expressed the testator's intention to limit the fee estate given to his wife in the first instance. We think the most that can be said for this provision is that plausible argument may be made for a construction favorable to a life estate limitation. But it can hardly be denied that there is doubt and room for difference of opinion. Admitting there is doubt in the meaning, the contention for the limitation must fail, in application of the apt expression of the rule we have heretofore quoted, "we do not easily trade a certainty for a doubt". We quote, also, on this point the following vigorous statement from Lord Brougham, in the case of *Thornhill* v. *Hall*, 8 Bligh., 88, 107:

" 'My Lords, I hold it to be a rule that admits of no exception in the construction of written instruments,

that where one interest is given, where one estate is conveyed, where one benefit is bestowed in one part of an instrument, by terms clear, unambiguous, liable to no doubt, clouded by no obscurity, by terms upon which, if they stood alone, no man breathing, be he lawyer, or be he layman, could entertain a doubt, in order to reverse that opinion to which the terms would of themselves and standing alone have led, it is not sufficient that you show a possibility, it is not sufficient that you should deal in probabilities; but that you must show something in another part of that instrument which is as decisive the one way as the other terms were decisive the other way, not by the or dubium or possible or even probable; but that it must be taken away, and can only be taken away by *expressum et certum'* ''.

The definition of the precatory word ''wish'' does not, according to its ordinary use, embrace a command. The most that can be said of it is that its use may, in certain contexts and under conditions otherwise indicating such a purpose, be held to create a trust, a conclusion which we do not find called for in the case before us, when the will as a whole is considered. Bouvier's Law Dictionary, Rawle's Third Revision, p. 2654, under ''Precatory Words'', quotes 1 Jarman on Wills, 406 Note, as follows:

''Precatory words do not always create a trust. The question in every case is one of intention. Expressions *per se* sufficient to create a trust may be deprived of that effect by a context especially declaring or by implication showing no trust was intended. The question in all cases is, was the direction imperative? The real question to be determined when such words are used is whether the confidence, hope, or wish expressed is meant to

govern the donee, or whether it was a mere indication of that which the testator thinks would be a reasonable or suitable use of the property conveyed, leaving the matter ultimately to the decision of the donee''.

It seems to be the general rule that a trust will not be declared on the basis of precatory words where the amount of the property to which the trust should attach is not sufficiently defined. Bouvier, 963, Rawle's Third Revision, p. 2654, citing 1 Bro. C. C., 142; 1 Sim., 542, 546. And the applicable rule appears further to exclude a trust where the testator shows an intention to leave property absolutely, which is the case before us. The rule formerly applied in England has undergone a change, according to the current of decision. 27 Ch. Div., 394. Appeal of Paisley, 70 Pa., 153; *Gilbert* v. *Chapin,* 19 Conn., 342, 351.

In conclusion, we note a distinction, sometimes overlooked, between cases where a fee is given in the first instance, and subsequent provisions are relied on to limit the estate, which is the case now before us, and cases where a life estate is apparently intended in the first instance, and it is sought by subsequent provisions to enlarge the estate and make it absolute. It is to the first class of cases that the rule applies requiring certainty beyond doubt in the subsequent limitation, rather than to the second class, in which the limitation is found as a part of the devise in the first instance, or immediately connected therewith. It was within this latter class that *Carson* v. *Carson,* 115 Tenn., 37, 88 S. W., 175, falls, where the Court held that, while in the *first part* of the first clause a fee simple estate was given, super added words in *the same* clause cut down this fee-simple estate, so that the Court said [page 47], ''Taking the entire

clause as a whole, we are of opinion that the estate given is not a fee'', etc.   And so, in our recent case of *Williams* v. *Coldwell et al.,* 172 Tenn., 214, 111 S. W. (2d), 367, 114 A. L. R., 941, while the will referred to in that opinion was construed to vest a life estate only in the widow, the devise *in the first instance* was to ''her full and free use and benefit, *during her natural life*'' [page 218], the contention made and overruled being that subsequent language gave an unlimited power of disposition.   There is nothing in these cases in conflict with ''The general doctrine laid down in our cases and in the text-books'', to quote the language of the Carson Case, ''that a fee-simple estate given in the first portion of a devise, with absolute power of disposition, will not be limited or cut down by subsequent clauses and provisions of the will'', citing cases.   Many of the cases cited on the briefs of counsel for the heirs are on their facts cases where the limited estate was provided for in the first instance.

It results that finding here, in the first instance, an absolute devise of a fee estate, expressed in plain and unequivocal language, while the provisions for a limitation over is not so expressed, but involved in at least some degree of doubt as to its meaning; and finding, further, a provision, which by implication confers upon the first taker an unlimited power of disposition, we are constrained to reverse the Court of Appeals and sustain the claim of Mrs. St. John to an estate in fee in the property passing under the will before us.

This Court having felt constrained to differ with the learned Chancellor on the fundamental question involved of the property rights of the principal parties, and it being apparent that various orders of the Chancellor touching administration of the property, fees of attorneys,

etc., were predicated on the conclusion he had reached as to the nature of the estate passing to the widow under the will, all such orders are now reversed and set aside as parts of the principal decree, and the cause is remanded for reconsideration and such further proceedings as may be necessary and proper in the premises.

Reversed and remanded.