HASKINS *v.* McCAMPBELL *et al.*

(*Knoxville*, September Term, 1949.)

Opinion filed December 17, 1949.

Rehearing Denied February 10, 1950.

W. E. MICHAEL, of Sweetwater, for appellant.

PEACE & SLOAN, of Madisonville, DORA E. YOUNG, of Sweetwater, for appellees.

Mr. Justice Gailor delivered the opinion of the Court.

The original bill, as amended, was filed in this cause to construe certain parts of the will of J. J. Haskins who died in Monroe County on October 4, 1946. The complainant, T. W. Haskins, is the executor and a beneficiary under the will, and the defendants are the executrix and distributees and heirs at law of the widow of J. J. Haskins, Jannie McCampbell Haskins, who survived her husband, and died in Monroe County on November 27, 1947. The suit involves only the personal property left by J. J. Haskins. The complainant insists that by a proper construction of certain clauses of the will, that he took the remainder or residue of the personalty after the enjoyment by the widow of a life estate. The defendants, on the other hand, insist that by a proper construction of the will, the widow was given the personal property absolutely.

Defendants met the original bill and the bill as amended, by demurrer, which was at first overruled by the Chancellor with leave granted to rely on the grounds of the demurrer in the answer. The defendants then answered and proof was taken and the cause heard. After writing and filing a well-considered and comprehensive opinion, which has been of much aid to this Court, the

Chancellor entered a decree sustaining the demurrer, and the complainant has appealed.

We find it unnecessary to consider the assignments of error seriatim, as the only question presented for determination is whether, under a proper construction of the will, the widow, and so her heirs and distributees, took the personalty absolutely, or whether the complainant took a remainder interest in the residue after the widow's enjoyment of a life estate.

The questioned clauses of the will are as follows:

"Second,—After the payment of debts and funeral expenses as aforesaid, *I give, devise and bequeath to my wife, Jannie Haskins, all my person property,* except a small lot of jewelry now in my possession as family 'keep-sakes.' This jewelry I desire turned over to my brother, T. W. Haskins, at the death of my said wife, to be delivered to his children when they become of legal age.

"Third,—I desire and also direct that my said wife remain undisturbed in our home and retain a life estate in the entire tract of land on which the home or residence is situated so long as she may live.

"Fourth,—*I desire and hereby direct that my real estate and whatever may remain of my estate,* after the death of my said wife, go to my said brother, if he survive me, otherwise, to my next of kin, according to the laws of inheritance. I desire, however, and hereby direct that the sum of Five Hundred Dollars be paid out of the proceeds of my real estate, after the death of my said wife, to the trustees of the Steekey Cemetery, at Loudon, Tennessee, said $500 to be held as a trust fund to be put at interest, said interest to be expended only in the care, upkeep, and improvement of said cemetery

486

and on the family burying lot on which mother and father are buried." (Emphasis supplied.)

 It is not debatable that by the words of the second clause, "I give, devise and bequeath to my wife Jannie Haskins, all my *person* property," the testator gave to the widow the personalty absolutely in possession without limitation or condition. *Cox* v. *Sullins,* 181 Tenn. 601, 605, 183 S. W. 2d 865. This construction is fortified by the equally undisputed fact that in contrast in the same clause, he gave her only a life estate in "the small lot of jewelry." The difficulty is to determine what the testator meant by the words at the commencement of the fourth clause, "I desire and hereby direct that my real estate and *whatever may remain of my estate. . . ."* To what property the testator referred when he used the words, "whatever may remain of my estate," is wholly ambiguous and unclear. Though the will is obviously written by a layman and contains some misspelling, it seems to us significant that in the second clause of the will the testator. used the term "person property" accurately and correctly as referring to goods and chattels, and moreover, that in the second clause he disposed of all his personal property, both that which he gave to his widow absolutely, and the keepsakes or heirlooms in which he gave her a life estate. On the other hand, in the third clause where he gave to his widow a life estate in the home and the entire tract of land on which it lay, he correctly and accurately used the word "estate" and not "property," and he does the same in the fourth clause of the will, in which he undertakes to dispose of the remainder interest in the realty. Since in the second clause there is given to the widow, an unlimited right to dispose of the personal property, and

in the fourth clause there is at most, a wholly ambiguous attempt to cut down that interest of the widow given in the second clause, the following rule is applicable:

"It is a fundamental principle in determining this question that where there is an absolute and unlimited power of disposition in the first taker of personal assets the limitation over is void. They are inconsistent, and cannot stand together. *Smith* v. *Bell, Mart. & Y.*, 302-305 [8 Tenn. 302-305, 17 Am. Dec. 798]. It is of the essence of a valid executory devise or bequest that it be not in the power of the first taker to defeat it by any act of his. If an unlimited power of disposition be given the first taker, an absolute estate vests in him, and the executory limitation is nugatory. *Bean* v. *Myers,* 1 Cold. [226], 227, 228 [41 Tenn. 226, 227, 228]. And this power of disposition may be given, not only in express words, but also by words necessarily implying such power. *Bradley* v. *Carnes,* [10 Pick., 27, 31], 94 Tenn. 27, 31, 27 S. W. 1007 [45 Am. St. Rep. 696], and cases cited; *Williams* v. *Jones,* 2 Swan 620 [32 Tenn. 620]; *Booker* v. *Booker,* 5 Humph, 505, [511], 512 [24 Tenn. 505, 511, 512].

. . . . . .

"No slight circumstance or ambiguous words will prevent the application of the general rule, but the reason and terms must be plain, strong, and decisive in order that subsequent provisions may be held to cut down a fee already given into a lesser estate. *Benson* v. *Corbin,* 145 N. Y. 351 [358], 40 N. E. 11; and the great weight of authority is in accord with this holding." *Meacham* v. *Graham,* 98 Tenn. 190, 200, 201, 208, 39 S. W. 12, 14. Cited and approved in *Smith et al.* v. *Reynolds,* 173 Tenn. 579, 586, 121 S. W. 2d 572.

Not only does his use of the words support the conclusion, that the testator considered that he had finally disposed of his personal estate by the second clause of the will, and that the fourth clause referred only to realty, but that conclusion is strengthened by the fact that in the fourth clause, in spite of the fact that he left some $14,000 in bank, he provided for the trust fund of $500 to be set up out of a sale of land. If the testator had, as complainant contends, meant by the use of the words "whatever may remain of my estate," to refer back to the personal property, it would have been more natural and reasonable to have set up the $500 trust out of the residue of personalty coming into the hands of the brother.

With further reference to the use of the word "estate" in the fourth clause of the will, in its primary technical sense, the word "estate" referred only to an interest in realty.

"In the construction of the statute on which the suit is based, the meaning of the word 'estate' is to be determined. Lord Coke defines the word thus: 'State or estates signifieth such inheritance, or freehold, term for years, tenancie by statute merchant, staple eliget, or the like, as any man hath in lands or tenements.' Co. Lit., 345 a." *Bailey* v. *Henry,* 125 Tenn. 390, 396, 143 S. W. 1124, 1126; *North* v. *Graham,* 235 Ill. 178, 85 N. E. 267, 18 L.R.A., N. S., 624, 126 Am. St. Rep. 189.

However, the word has been so broadly used to include both realty and personalty throughout our cases, that it has lost its strict original meaning. Indeed, by a forced construction of an early statute, it was held by this Court, that "estate" applied only to personalty and not to land. *Puckett's Lessee* v. *Owens,* 7 Tenn. 167, 172.

It is only the meaning that the testator meant to give the word that concerns us here, but we think it is significant that he distinguished between his dispositions of personalty and realty by use of the word "property," for the former in clause two, and the use of the word "estate" for the disposition of the latter in clauses three and four.

As further evidence of the ambiguity in clause four it is to be considered that in a technical sense, "whatever may remain of my estate," could be referred to the "small lot of jewelry" and "keep-sakes," which as heirlooms, were mixed property, *Wilson* v. *Rybolt*, 17 Indiana 391, 79 Am. Dec. 486; *Miller* v. *Worrall*, 62 N. J. Eq., 776, 48 A. 586, 90 Am. St. Rep. 480, and to be turned over to the complainant after the widow's use of them for life.

We, therefore, agree with the Chancellor and the following expression of his conclusions:

"It is a well settled rule of construction that the Court will look to the entire Will in arriving at the intention of the testator. The rule is also well settled that, 'a subsequent provision in a Will cutting down an estate already granted in or absolutely must be expressed with equal clearness and explicitness to that devising an estate in fee in the first instance."

"The Court cannot help but experience doubt concerning the language employed when the testator said, 'whatever may remain of my estate,' would go to his brother upon his wife's death. In other words, there is absolutely no doubt about the intention of the testator as expressed in the Second provision of the will, where-

as, doubt is experienced concerning his intention as expressed in the Fourth provision of the will.

. . . . . .

"In looking to the four corners of the Will it will be noted that after bequeathing the personal property outright, except the 'keep-sakes' to his widow, the 'keepsakes' to remain with her until her death, Mr. Haskins then provides in the next paragraph for his wife to have a 'life estate' in the entire tract of land on which the home or residence is situated, so long as she may live. Clearly it will be seen, the testator was making a distinction between the personal property and the real estate, the personal property to his wife outright, with said exception, the jewelry to her for life after which time it would go to the children of T. W. Haskins, when they became of age, and the home to his wife for life with the remainder in his brother, if living; and, if not, to testator's next of kin according to the laws of inheritance. (Fourth Provision of the Will.) It will also be noted that the testator provided in the Fourth paragraph of the will that a trust fund of $500 was created and impressed upon the real estate. This further evidences testator's intention to give outright to his wife, or widow, all of his personal property except the jewelry, which he directs shall go to other members of his brother's family. Otherwise, why would the testator encumber the real estate with a bequest of $500 in trust, when the record reveals some $14,000 to $16,000 in personal property?"

The assignments of error are overruled and the decree of the Chancellor affirmed at the appellant's cost.

All concur.