MARSH et al. v. PORCH.—242 S. W. (2d) 691.

Middle Section.   March 30, 1951.

Petition for Certiorari denied by Supreme Court, July 27, 1951.

Rehearing denied October 9, 1951.

David F. Fleming, of Columbia, for plaintiff in error.

Mack C. Simpson, of Waverly, and Walker & Hooker, of Nashville, for defendant in error.

HOWELL, J.   This is an appeal from the action of the County Judge of Humphreys County in disallowing a claim filed by Mildred Hollister Marsh, Mary Joe Turner Wehrenberg and Christine Turner Baraga against John F. Porch, Jr. as Administrator of the estate of Mrs. Nell C. Turner, deceased, for the amount of $44,736.98, which

amount the claimants say is due them from the estate of C. W. Turner who left it in personalty to his wife Mrs. Nell C. Turner for her life and that Mrs. Turner, having died still possessed of this fund, it now belongs to claimants under the terms of the will of C. W. Turner.

The defendant filed demurrers to the claim and also an answer denying that claimants were entitled to anything.

The case was heard by the County Judge, the demurrers overruled and the claim denied.

Both claimants and the defendant have appealed to this Court and have assigned errors.

The defendant assigned as error the action of the trial Judge in overruling the second ground of the demurrer to the claim which was: "That the claimants have chosen the wrong court in which to try their claim, as this Court has no jurisdiction to surcharge the settlement of the estate of C. W. Turner."

■ This claim was for the specified amount of $44,736.98, was in proper form and properly filed against the estate of Mrs. Nell C. Turner.

In the case of Cooper's Estate v. Keathley, 27 Tenn. App. 7, 177 S. W. (2d) 356, 358, this Court said: "Chapter 175, Acts of 1939 introduced important changes in the law of administration of estates of decedents. Under that Act the personal representative, within 30 days from the issuance of his letters, must publish notice for creditors and, within one year from the first publication of such notice, they must file their claims against the estate with the clerk of the county or probate court in which the estate is being administered. Likewise, within one year, certified copies of orders of revivor of suits revived in other courts against the personal representative must be filed with such clerk. All claims of whatsoever sort not so filed within the year are forever barred. The

personal representative, or any creditor, distributee or heir, may except to any claim by filing written exceptions with the clerk; and all issues upon such exceptions are to be tried by the county or probate judge, without formal pleadings, upon evidence as in other cases.''

See also Collins v. Ruffner, 185 Tenn. at page 290, 206 S. W. (2d) 298. This was a claim for a specific amount of money against the estate of Mrs. Nell C. Turner.

The assignment of error by the defendant is overruled.

The substance of the assignments of error by the claimants is that the trial Judge erred in disallowing their claim and assessing the costs against them for several different reasons.

The material facts are that the claimants are nieces of former Congressman C. W. Turner, who died on March 24, 1939, and whose estate was administered in the County Court of Humphreys County by his widow, Mrs. Nell C. Turner, as administratrix.

On January 23, 1926, Congressman C. W. Turner wrote a letter to his two brothers and one sister from a hospital at Rochester, Minnesota, as follows:

> "Rochester, Minn.
> "Jan. 23, 1926

"To Bruce Joe and Sister:

"I am going to be operated on Monday Jan. 26, 1926, on account of Duo'd Ulser. While I have no fears, yet we never know what might happen in such cases. I am leaving this statement as a general guide (as near as I can tell now) as to how I would like for my estate to be disposed of. I want my wife who has at all times been good and kind to me to have all my personal property— and real estate located in Waverly, Tenn. also, my one half interest in the Luten, Jim Turner and Arkansas farms for and during her natural life. If thought best convert

the real estate into some other class of property. After her death I desire that this property go in equal parts to Mildred Marsh, Mary Joe and Christine Turner. I want Mildred Marsh to have the old Sullivan place and hope she will keep it in family for years to come, as the timber growing thereon will become valuable. I want Mary Joe and Christine Turner to have my property on Dry Creek, consisting of about 1800 acres, about 400 acres North West of Waverly, 21 acres North of Waverly, 114 acres West of German and 90 acres on Bradly Branch, provided Joe does not make a large claim against me if so sell enough of last mentioned property to pay his claim. I want you three to have my interest in the old home and River Tracts. If any claims are presented against my estate have enough trees cut on Sullivan place to pay them. I have tried to take care of the children in our families believing you had enough to keep you in old age and would approve of my course. I know you will take care of mother, otherwise would make any provision necessary for her welfare I want you all to treat my wife as you would me  She has done all she could for me. With love for all, I am,

"Yours, C. W. Turner."

On March 24, 1939, Congressman C. W. Turner died.

The widow Mrs. Nell C. Turner, on February 19, 1940, offered this letter for probate as the last will and testament of C. W. Turner and it was probated as his holographic will and Mrs. Turner was appointed administratrix, with the will annexed and qualified by executing a bond in the sum of $20,000.

The administratrix filed her final settlement in the County Court which was examined and confirmed by the County Judge on June 2, 1941. This final settlement contains the following as its last paragraph: "Subtract

$12,056.87 from $56,793.85 will leave $44,736.98 in the hands of the Administratrix and she reports nothing further to come into her hands. As the above $44,736.98 goes to the Administratrix under the will of C. W. Turner now on record in this office. She asks that she and her bondsmen be released from any further liability as such administratrix. The Court so orders."

The widow Mrs. Nell C. Turner died on September 27, 1949, and John F. Porch, Jr. qualified as Administrator of her estate.

The claimants then filed their claim against the estate of Mrs. Nell C. Turner in which it is insisted that under the will of C. W. Turner his widow only took a life estate in the $44,736.98 which her final settlement showed to be the personalty in her hands as such administratrix and that upon her death this personalty became their absolute property and to which they are entitled to the immediate possession.

The answer of the administrator denies that by a proper construction of the letter probated as the will of C. W. Turner, it was intended that the widow took only a life estate in the personalty left by her husband. The answer further says:

"That upon the death of C. W. Turner on March 24th, 1939, neither his widow, Mrs. Nell C. Turner, now deceased, nor his other heirs at law, including the claimants, namely J. A. Turner, W. B. Turner, Mrs. Nora Hollister, Mrs. Mildred Hollister Marsh, Mrs. Mary Jo Turner Wehrenberg, and Mrs. Christine Turner Baraga, considered the paper writing left by the said C. W. Turner and upon which this claim is based a will, as the paper writing plainly states in its face 'I am leaving this statement as a general guide (as near as I can tell now) as to how I would like my estate to be disposed of.' These

parties and heirs at law of C. W. Turner considered that he had died intestate, and upon that basis they proceeded to settle his estate and make division among themselves.

"And after considerable negotiations between the widow and the Turner heirs, the said parties drew up a written agreement as a basis of settlement. However, in approaching and reaching final agreement several drafts of the agreement was made. The first draft was changed and enterlined and after this a second draft of the agreement was made, which was also changed and enter-lined and finally a third and final draft was made, and upon this agreement the estate of C. W. Turner was finally settled between the widow and the Turner heirs. However, a signed copy of this agreement has not been found, after diligent search, among the papers of the said Mrs. Nell C. Turner, and the same was not recorded, but the Administrator is informed, and believes that such agreement was signed. As the best evidence of the agreement that the Administrator can now produce, he herewith files unsigned copy of the first, second and final drafts of said agreement, marked exhibits A, B, and C.

"In each of the above exhibits, it is specifically stated in Section 13 that 'the letter or guide which C. W. Turner wrote January 23rd, 1926, and all other paper writings, if any, purporting to be a will are to be disregarded except as a general direction as herein set out and no claims will be made thereunder by any of us.'

"That said agreement set out in detail the property that the widow was to receive and the property that the Turner heirs were to receive, and the interest of each therein, and in each draft of said agreement the widow, Mrs. Nell C. Turner, was to receive all of the personal property, as the law provided in the case where her husband had died intestate and without children.

"And pursuant to said agreement and in accordance with the terms thereof the parties by Quit-Claim deeds settled, divided and partitioned the said estate among themselves by two Quit-Claim deeds, duly executed, acknowledged, delievered and recorded, both of which are dated February 7th, 1940, and one of which is recorded in Deed Book 53, page 286 of the Register's Office of Humphreys County, Tennessee, and other is recorded in Book 53, page 349 of the Register's Office of Humphreys County, Tennessee, certified copies of said two Quit-Claim deeds are hereby filed as exhibits D. and E. and made a part hereof.

"That by said agreement and under said Quit-Claim deeds the widow, Mrs. Nell C. Turner, took title in fee to real estate in Waverly, Humphreys County, Tennessee, set forth as follows:     *     *     *."

Copies of these agreements, unsigned, are filed as exhibits and also copies of the deeds referred to, recorded as averred in the answer are filed as exhibits. One of these deeds is dated January 7, 1940, and the other on February 7, 1940. It was after the date of these papers and on February 9, 1940, that the widow filed and had the letter set out above probated as the will of C. W. Turner.

It is noted that this answer avers that these claimants were parties to the alleged agreement as to the division of the C. W. Turner estate and executed the quitclaim deeds pursuant to this agreement, a part of which was: "Sec. 1. Mrs. Nell C. Turner, his widow is to have all the personal property", and none of them testified in this case. In fact there is no testimony of any witnesses. If these claimants did not agree to the settlement of the estate of C. W. Turner in 1940 as set out in the answer and

in these unsigned copies of the agreements, it is reasonable to presume they would have testified and said so.

It is also noted that the record does not disclose that any question was raised about the ownership of this personalty from the dates of the alleged agreement and quitclaim deeds in 1940 until after the death of Mrs. Nell C. Turner in 1949.

■ The trial Judge in construing the will and finding the intention of the testator said in part:

"I am of the opinion that a construction of the letter written by the late C. W. Turner on January 23, 1926 and filed as Exhibit to the petition in this cause is determinative of all matters involved. This is especially so when construed in the light of all the surrounding circumstances, the settlement of C. W. Turner's estate by his widow on June 2, 1941, and the previous settlement and agreement made between the parties relative to the real estate.

"First, considering the construction to be placed on that portion of the letter wherein personal property was mentioned, I am of the opinion that the statement 'I am leaving this statement as a general guide (as near as I can tell now) as to how I would like for my estate to be disposed of. I want my wife, who has at all times been good and kind to me, to have all my personal property and real estate located in Waverly, Tennessee', in the absence of any thing further conveyed to his wife his personal property and real estate in Waverly without any limitations. Any other constructions would in my opinion be inconsistent with all the facts disclosed in this record. The certified photostatic copy of the record from the Department of Finance and Taxation discloses that a large portion of the personal estate in the name of C. W. Turner belonged to and was the separate of Mrs. Nell C.

Turner. There is an affidavit by Mrs. Turner and one by the cashier of Citizens Bank of Waverly, both being signed and the affidavit of Mrs. Turner being sworn to. Furthermore the following statement in the will that 'also my one-half interest in the Luten, Jim Turner, and Arkansas farms for it during her natural life', only adds additional property to Mrs. Turner with the additional property being limited to her use during her life. These statements in Mr. Turner's will, or the letter that was probated as a will, show definitely that he wanted her taken care of out of his estate and to hold that he did not give her the personal property without limitations would, in fact, be a finding that he did not take care of her out of his estate.''

We concur with the trial Judge in the conclusions just set out as to the proper construction of the language quoted. Many authorities are cited by counsel in the elaborate and well prepared brief and argument which we have carefully considered. References to other will cases however, are of little assistance in construing the will before us as no two wills are worded exactly alike and the surrounding circumstances and the situations of the parties involved are not the same.

If we are in error in holding that the trial Judge properly construed the will, we are of the opinion that the claimants cannot recover for the reason that the construction placed upon the will by claimants gives to the widow this personalty, consisting of nearly $30,000 in cash and the remainder in stocks, bonds, notes, corn and peanuts, absolutely, and then undertakes to limit her estate to a life estate.

In the case of Haskins v. McCampbell, 189 Tenn. 482, 226 S. W. (2d) 88, 90, in an opinion by Justice Gailor it is said:

"Since in the second clause there is given to the widow, an unlimited right to dispose of the personal property, and in the fourth clause there is at most, a wholly ambiguous attempt to cut down that interest of the widow given in the second clause, the following rule is applicable:

" 'It is a fundamental principle in determining this question that where there is an absolute and unlimited power of disposition in the first taker of personal assets the limitation over is void. They are inconsistent, and cannot stand together. Smith v. Bell, Mart & Y., 302-305 (8 Tenn. 302-305, 17 Am. Dec. 798). It is of the essence of a valid executory devise or bequest that it be not in the power of the first taker to defeat it by any act of his. If an unlimited power of disposition be given the first taker, an absolute estate vests in him, and the executory limitation is nugatory. Bean v. Myers, 1 Cold. (226), 227, 228 (41 Tenn. 226, 227, 228). And this power of disposition may be given, not only in express words, but also by words necessarily implying such power. Bradley v. Carnes, (10 Pick. 27, 31), 94 Tenn. 27, 31, 27 S. W. 1007 (45 Am. St. Rep. 696), and cases cited; Williams v. Jones, 2 Swan 620 (32 Tenn. 620); Booker v. Booker, 5 Humph. 505, (511) 512 (24 Tenn. 505, 511, 512).

" 'No slight circumstance or ambiguous words will prevent the application of the general rule, but the reason and terms must be plain, strong, and decisive in order that subsequent provisions may be held to cut down a fee already given into a lesser estate. Benson v. Corbin, 145 N. Y. 351 (358), 40 N. E. 11; and the great weight of authority is in accord with this holding.' Meacham v. Graham, 98 Tenn. 190, 200, 201, 208, 39 S. W. 12, 14. Cited and approved in Smith et al. v. Reynolds, 173 Tenn. 579, 586, 121 S. W. (2d) 572.''

Also in an opinion by Justice Gailor in the case of Cox v. Sullins, 181 Tenn. 601, 183 S. W. (2d) 865, 866, it is said: "The only question is whether Dr. Jones became the absolute owner of the securities in Item Four, or took only a life estate in them. The language of the first sentence of the bequest is unconditioned and all-inclusive: 'I give, devise and bequeath to my husband Dr. Thos. ap. R. Jones, my Government Bonds, stock in Appalachian Mills, Standard Knitting Mills, Eldridge Imp. Co., Cherokee Spinning Co., Fidelity-Bankers Trust Co.' We can conceive no language which would more clearly and fully give Dr. Jones the absolute ownership of these securities, and the words, 'Any of these bequests that are still in his possession at his death,' merely fortify a conclusion that he was being given an absolute power of their disposition."

See also the more recent case of Hinton v. Bowen, 190 Tenn. 463, 230 S. W. (2d) 965.

Many other authorities may be referred to.

After a careful consideration of the briefs and arguments of counsel we are of the opinion that there is no error in the holding of the trial Judge denying the claim against the estate of Mrs. Nell C. Turner and assessing the costs against the claimants. The assignments of error by the claimants are overruled and the decree of the County Court is affirmed.

The administrator John F. Porch, Jr. will pay one-third of the costs of the appeal and the remaining two-thirds will be paid by the claimants.

Hickerson, J., and Kizer, Special Judge, concur.