Cox, Ex'r., v. Sullins *et al.*

(*Knoxville*, September Term, 1944.)

Opinion filed December 2, 1944.

JOHN WM. GREENE, of Knoxville, for Cox, complainant.

JOEL H. ANDERSON, of Knoxville, for Mrs. Susan J. Steele.

NORMAN B. MORRELL, of Knoxville, for Monday and Miss Jess Trotter.

CHAS. D. MOUNGER, of Knoxville, for executors and trustees of estate of T. ap. R. Jones.

MR. JUSTICE GAILOR delivered the opinion of the Court.

This appeal presents the problem of a proper construction of certain clauses of the will of Mary Luttrell Jones who died in Knox County in March, 1940. Williston M. Cox was named as Executor in the will and qualified in such capacity. As complainant, he filed the original bill in the Chancery Court of Knox County against a number of defendants, to ascertain a proper construction of certain clauses of the will and his duties as executor thereunder.

One of the chief beneficiaries under the will of Mrs. Jones was her husband, Dr. T. ap. R. Jones, who survived his wife but died testate prior to the filing of the original bill. His Executors, Samuel Sullins and Charles Mounger, were therefore made defendants in their representative capacity, and Samuel Sullins was also made a defendant as administrator of the estate of his deceased brother, David Sullins, who had been killed in 1939, prior to the death of Mrs. Jones, but who was named as one of the beneficiaries in the will.

Mrs. Sue Steele and Mrs. Norman Halstead, as sisters and heirs of Dr. Jones, were made defendants and filed their answers.

Miss Jess Trotter and Rush Strong Monday, being named as conditional beneficiaries in Mrs. Jones' will, were made defendants and filed their answers.

It is unnecessary to this opinion to list the other defendants who filed formal answers, and it is sufficient that all defendants admitted that the bill was properly filed by the executor, and join in his prayer for a construction of the will and a declaration of rights thereunder.

Viewed in their relation to the entire testament, the following clauses are those upon which a construction is sought:

"Fourth: I give, devise and bequeath to my husband Dr. Thos. ap. R. Jones, my Government Bonds, stock in Appalachian Mills, Standard Knitting Mills, Eldridge Imp. Co., Cherokee Spinning Co., Fidelity-Bankers Trust Co. Any of these bequests that are still in his possession at his death must be given to my nephew David Sullins."

"Seventh. . . . After the settlement of my Estate should there be any cash left, I direct that my Executor divide this cash equally between Miss Jess Trotter and Rush Strong Monday . . ."

The facts are presented in a stipulation duly filed and made a part of the record. This stipulation discloses that at the time of the filing of the original bill, the administration of the estate was practically complete; that at the time of his qualification, the executor took into his hands more than $30,000 in cash, and all of the securities listed in Item Four of the will, were turned over by the executor to the beneficiary, Dr. Jones, except a $5,000 Government Bond; that these securities were not endorsed by the executor and remained in the estate of Dr. Jones at the time of his death; that the father and mother of the testatrix had predeceased her and there remained at the time of the qualification of her executor, small

claims against both their estates, which were assets of the estate of the testatrix; that David Sullins and his wife, Dixie Sullins, had died without issue in July, 1939, after the will of Mrs. Jones had been written and executed, but prior to the time of her death; that since both these parties were beneficiaries under her will, the executor retained the $5,000 Government Bond as security against claims arising from the estate of David and Dixie Sullins.

In a careful opinion, the Chancellor held (1) that by Item Four of the will, Dr. Jones became the absolute owner of the securities mentioned therein, and that the limitation over was ineffectual and void. (2) That since David Sullins and his wife, Dixie Sullins, predeceased Mrs. Jones, the legacies to them lapsed, and that any cash not expended by the Executor in the settlement of the estate was "cash remaining in the hands of the Executor" under Item Seven of the will and was to be equally divided between Miss Jess Trotter and Rush Strong Monday. (3) That the will does not contain a general residuary clause, and that the "cash" mentioned in the above quoted portion of Item Seven of the will referred to the large amount of cash that the testatrix had on hand and which passed into the hands of her executor at the time of her death.

From this decree of the Chancellor defendants Trotter and Monday have appealed and made two assignments of error. We consider them in order. They are (1) that the Chancellor erred in holding that Dr. Jones became the absolute owner of the securities listed in Item Four, and that on the other hand, he took only a life estate in said securities, and the remainder, since the legacy to David Sullins had lapsed, became a part of the residuary estate, and that (2) the Chancellor erred in holding that there was no general residuary clause in the will, and

that the words used in Item Seven of the will, to give cash to defendants Trotter and Monday were ineffective as such general residuary clause.

Since, according to the stipulation of facts, David Sullins died before the testatrix and left no issue, any interest he might have taken under Item Four of the will had lapsed when the will became effective at the death of the testatrix. *Dixon* v. *Cooper*, 88 Tenn., 177, 12 S. W., 445; *Garner et al.* v. *Home Bank & Trust Co. et al.*, 171 Tenn., 652, 660, 107 S. W. (2d), 223; *White* v. *Kane*, 178 Tenn., 469, 474, 159 S. W. (2d), 92. There is here, therefore, no question of the validity of a remainder over, or of an executory bequest. The only question is whether Dr. Jones became the absolute owner of the securities in Item Four, or took only a life estate in them. The language of the first sentence of the bequest is unconditioned and all-inclusive: "I give, devise and bequeath to my husband Dr. Thos. ap. R. Jones, my Government Bonds, stock in Appalachian Mills, Standard Knitting Mills, Eldridge Imp. Co., Cherokee Spinning Co., Fidelity-Bankers Trust Co." We can conceive no language which would more clearly and fully give Dr. Jones the absolute ownership of these securities, and the words, "Any of these bequests that are still in his possession at his death," merely fortify a conclusion that he was being given an absolute power of their disposition. The first assignment of error is, therefore, overruled.

By their second assignment of error, the defendants insist that the Chancellor erred in holding that there was no general residuary clause in the will of Mrs. Jones, and maintain that the language by which a gift of cash was made to these defendants in Item Seven of the will constituted such a clause. To support this contention the defendants have lifted a single sentence from the body

of Item Seven, but to give a fair consideration to it, and to deduce the real meaning of the testatrix in its use, we feel that both the matter preceding and that succeeding should be considered in reaching a fair construction of the clause in question. The first part of Item Seven contains 27 legacies of specific articles of personal property, and names the beneficiaries, then the will provides:

"All expenses of carrying out my will are to be paid out of cash in my safety box, if the cash found in the safety box is not sufficient for these expenses a government bond or stock in an investment must be sold to cover all expenses.

"After the settlement of my Estate should there be any cash left, I direct that my Executor divide this cash equally between Miss Jess Trotter and Rush Strong Monday.

"I direct that the devises and bequests herein made shall be net to the beneficiaries named and that the Executor shall pay all taxes and expenses out of my residuary Estate."

We think the context makes clear what Mrs. Jones had in mind when she came to write this part of her will. She had completed a detailed distribution of her estate to many beneficiaries who were specified by name. Realizing that she was leaving a very large amount of cash, she provided that all expenses of the settlement of her estate should be first paid out of that cash, then that if the cash was insufficient, government bonds should be sold because those bonds were (next to cash) the most liquid of her assets. Finally she empowered her executor to sell stock if it should be necessary to defray the expenses of administration. If on the other hand, the large amount of cash should leave a surplus after paying all expenses of administration, she directed that that cash should be divided equally between defendants Trotter and Monday.

She next made it clear that she wished all of the legatees to receive their legacies net and without the deduction of any expenses whatever.

This last provision, it will be observed, ends with the words "residuary Estate," as will be seen from the foregoing quotation from the will. It seems to us a further and reasonable deduction that when the testatrix used these words "residuary Estate," that if she had intended to make a general disposition of the *residuum* of her estate that this was the place for such a clause. Conversely, if she had intended the clause above quoted giving cash to Trotter and Monday to have effect of a general residuary clause, that it would have been inserted in the will after the clause ending with the words "residuary Estate" and not before it.

Since we have held that Dr. Jones became the absolute owner of the securities listed in Item Four, and since we hold that the gift of cash to defendants Trotter and Monday in Item Seven had reference and was limited to a share of the cash remaining in the hands of the executor, not used in defraying the expenses of administration, and that the clause was not a general residuary clause, it is unnecessary for us to pass on the defendants' insistence that the word "cash" included securities. The fact that we hold that the testatrix made other disposition of the securities in the estate, makes it unnecessary for us to determine that question.

Both assignments of error are overruled and the decree of the Chancellor is affirmed. Since, however, a declaration of rights and a construction of the will was necessary, we think that the costs of the appeal should be paid out of the funds in the hands of the executor.

GREEN, C. J., CHAMBLISS and NEIL, JJ., and WEBB, Special Judge, concur.