J. N. PARKER, EXECUTOR, COMPLAINANT, APPELLEE, *v.*
IDORA MILAM *et al.,* DEFENDANTS, APPELLANTS.

(*Jackson,* April Term, 1933.)

Opinion filed June 17, 1933.

LATTA & LATTA, for complainant, appellee.

ROBERT D. JONES, for defendants, appellants.

MR. CHIEF JUSTICE GREEN delivered the opinion of the Court.

This bill was filed by the executor to construe the will of W. A. Hendrix, who died in March, 1932, and whose will was probated in said county during the same month. The guardian *ad litem* for certain minor defendants filed a cross bill, which was dismissed, and he appealed. The matters in controversy will be considered *seriatim*.

Among other provisions of the will, are these:

"SECOND: I direct that all of the lands that I may own at the time of my death be sold by my executor under such terms and stipulations as to him may seem best as soon after my death as practicable, except my Gibson county lands, disposed of as hereinafter set out, and I direct that from the proceeds of the sales of all the other lands the sum of four thousand dollars be first divided among the following five children or their representatives, viz,—W. B. Chitwood representing his mother, Sarah Alice Chitwood, Idora Milam, or her children if she then be dead; Emma Jane Sawyer, or her

children, if she then be dead; Martha Belle Morris, or her children, if she then be dead; and M. B. Hendrix, or his children, if he then be dead. I have omitted from this division of four thousand dollars the children of my deceased son J. H. Hendrix, because I have already paid out for him an amount at least equal to the said sum prorated among the other five children or their heirs and representatives. But after the said four thousand is so distributed among the said parties or their representatives, I direct that the remaining proceeds from the sale of my lands, omitting the Gibson County lands, be divided equally among all my six children or their heirs and representatives, charging Belle Hendrix Morris with fourteen hundred dollars for the Gibson lands reserved to her and which I hereby will to her as equivalent to fourteen hundred dollars.

"THIRD: I direct that all of my personal property that I may be possessed of at the time of my death be also sold by my executor upon such terms as to him may seem best, except that my bank stock shall not be sold but kept in bank for the full period of five years under the direction and control of my executor. The proceeds of the sale of the personal property (except the bank stock) shall be divided equally among my six heirs or their representatives, my several grand children dividing equally the part that belonged to the parent if deceased.

"FOURTH: I have fourteen hundred dollars in stock in the Citizens Bank at Dyersburg and one thousand dollars in stock in the Peoples State Bank at Newbern, Tennessee, and I desire that said stock and its accumulated dividends and interest be left in said banks as now deposited for the period of five years after my death un-

less the condition of said banks or either of them becomes such that in the opinion of my executor said funds should for prudential reasons be withdrawn; and if so withdrawn, they shall be deposited in another bank known by my executor to be in a safe and sound condition, to be kept on deposit till the end of the five year period after my death, when all my bank stock and dividends and other interests in said bank shall be sold by my executor and the proceeds equally divided among my six children or their representatives in equal parts, the several sets of grandchildren representing and receiving the share of their parent if such parent be dead.

"FIFTH: The bequeaths and legacies here made to my children or their heirs and representatives are made to them as a separate estate, free from the use, control or interference or debts of their husbands, and my immediate children are to have only the life time use of the property devised or bequeathed to them, so that the same may at their death descend unimpaired to their heirs or my grandchildren."

The first matter to be determined is the nature of the interest the beneficiaries named take in the fund of $4,000 directed to be raised and distributed in the second clause of the will. Do the four children named as such beneficiaries take their shares outright or take only a life interest therein by reason of the provision of the fifth clause of the will? The court below held that the children took their shares absolutely and we think he was correct.

All the testator's property was personalty or directed to be converted into personalty except the Gibson County land given to Belle Hendrix Morris and directed to be charged against her share of the personalty as $1400.

Since the whole estate was to be distributed as personalty, what was the purpose of testator in requiring the creation and segregation of this fund of $4000? Obviously one purpose was to equalize his four living children and the children of his deceased daughter, Sarah Alice, with his deceased son, J. H. Hendrix, for whom he had already paid out, according to the will, "an amount at least equal to the said sum prorated among the other five children or their heirs and representatives."

This scheme would be defeated so far as the surviving children are concerned if the will were construed to give these children only life estates in their shares of said $4000 fund. The deceased son, J. H. Hendrix, had the full and direct benefit of an amount "at least equal" to the portion of the $4000 fund provided for each surviving child. The whole will discloses a purpose on the part of testator to preserve entire equality among his children in the division of his estate. To effectuate this design we hold that the limitation in the fifth clause is not applicable to the apportionment of the $4000 fund provided in the second clause.

There would have been no point in setting up this $4000 fund if testator had intended it to go like the rest of his estate. The advancement to J. H. Hendrix might have been charged against the latter's share of the whole estate as well as against his share of the separate fund.

Owing to prevailing business conditions and the difficulty of obtaining at this time an adequate price for lands, the court below ordered that $4000 of money on hand be distributed by the executor among the beneficiaries of the $4000 fund directed by the testator to be raised from the sale of his real estate. The real estate exceeds $4000 in value. We see no impropriety in this

action, since all the estate was intended to be converted into personalty except the land given to Belle Hendrix Morris.

■ After distribution of the $4000 fund, the testator directed that the remainder of his property be "equally divided" among his "six children or their representatives" postponing the division of the proceeds of the bank stock. Then comes the fifth clause. We think that the fifth clause is a valid limitation upon the gifts to the children of testator, exclusive of their respective shares in the $4000 fund. The children take only a life estate in their several shares of the residue of the testator's property. It seems to us that the language used is too plain to permit of any other interpretation. Testator said: "My immediate children are to have only the life time use of the property devised or bequeathed to them, so that the same may at their death descend unimpaired to their heirs or my grandchildren." The use of such funds received by the children is restricted to their lives, and is further restricted to a use that will leave such funds unimpaired when they die.

We are referred to *Meacham v. Graham,* 98 Tenn., 190, as opposed to this construction. In that case, however, the money was to be paid to the young woman when she became of age "to be held and used by her until her marriage." With no limitation upon her use of the money during this period, the court held that she had an absolute power of disposition and that the remainder over was void.

■ The power of unlimited disposition which will defeat a limitation over must be a power given by the will itself, either directly or by necessary implication. A power attaching merely as a legal incident to the estate given by the will will not defeat a limitation over. *Carson v.*

*Carson,* 115 Tenn., 37; *Brown* v. *Hunt,* 59 Tenn. (12 Heisk.), 404; *Booker* v. *Booker,* 24 Tenn. (5 Humph.), 505. This rule applies with like force to bequests of personal property and devises of real property. *Read* v. *Watkins,* 79 Tenn. (11 Lea), 158.

The will before us confers no unlimited power of disposition upon the shares of the residuary estate allotted to the children. No language is used from which such a power could be implied. The direction is merely that the money be ''equally divided'' among the children.

While as seen, no unrestricted power of disposition is conferred upon the children with respect to these legacies, even had such a power been given, the limitation over would not be void under the provisions of the new Code. See sections 8093 and 7603, Code of 1932.

We are of opinion, therefore, that the four children of testator, except as to their shares of the $4000 fund, take only a life interest in their shares of the residuary estate. It will be proper, therefore, for the court below to make necessary orders for the preservation of such shares when turned over to the children.

There is no limitation upon the shares of the residuary estate given to the grandchildren, the representatives of deceased children. They take absolutely *per stirpes.*

Other grandchildren, children of the living children, take vested remainders in the shares of the residuary estate allotted to their parents for life.

The court below, in addition to construing the will as indicated, undertook to direct a reconversion of the real estate ordered to be sold and therefore converted by the testator into personalty. Such an order was beyond the jurisdiction of the court, or of any court.

Such a reconversion can only be accomplished by un-

equivocal act or declaration of the owners of the entire beneficial interest. In the case before us, a *pro confesso* decree was taken against a number of those interested in the estate and made defendants to the executor's bill. Naturally such parties could not be said to have consented to the reconversion order. As to the minor defendants, the court undertook to make an election to reconvert on their behalf. It is undecided whether a court of chancery in Tennessee has any such authority. See *Chambers* v. *Preston,* 137 Tenn., 324, and *Wayne* v. *Fouts,* 108 Tenn., 145.

The reconversion was doubtless undertaken to avoid a sale of the real estate in the existing depressed market. We think no such step was necessary. The executor was directed by the will to convert the real estate as soon after testator's death "as practicable." The executor is thereby to be given discretion as to the time of the sale of the land. Testator evidently did not contemplate that his estate would be immediately wound up. He authorized the executor to hold the bank stock and its accumulations for a period of five years. If the parties interested do not force an early sale, the executor may delay said sale until conditions improve, at least a reasonable time.

The decree of the court below will be modified as indicated and the cause remanded for further proceedings to the Probate Court of Dyer County. The executor will pay the costs of this court out of the funds of the estate.

It may be noted that the court below proceeded under authority of chapter 161 of the Private Acts of 1927, which statute confers upon the Probate Court of Dyer County full chancery jurisdiction in the premises.