REDMAN *v.* EVANS *et al.*

(*Nashville,* December Term, 1946.)

Opinion filed February 1, 1947.

PRIDE TOMLINSON, of Columbia, for Redman et al.

R. L. HARRIS, JR., of Columbia, guardian *ad litem* for Ann Evans and Frances Evans, minors.

MR. JUSTICE CHAMBLISS delivered the opinion of the Court.

Construction is called for of the will of Mrs. Mary Evans Jackson, who herself dictated this will on January 14th, 1946, to a stenographer employed in the hotel in which she was living and where she later died on the 1st day of April, 1946.

The will is brief and, in order that it may be viewed as a whole, is copied in full:

"This, my last will and testament, and being of sound mind and fully capable, I Bequeath to my cousin, Mrs. Mary Raines Davis, $5,000.00; and to each of my servants, should they be living with me at the time of my death, George Frierson, Polly Freeman, Eddie Arms, Andrew Rye, Lavenia Palmer, $100.00 each.

"To my brother-in-law, Ernest Redman, husband of my sister, $2,000.00. The residue of my estate, including my home and furnishings, to go to my nephew, Fred Watkins Evans, to handle as he sees fit during his lifetime; and the balance to go to his two daughters, Ann and

Frances Evans. It is my wish that Fred Watkins Evans will look after my brother, William W. Evans, during his lifetime. To my nephew Daniel Goode Evans $10,000.00.

"It is my wish that my just taxes and burial taxes be taken care of first.

"The reason I am not mentioning my other relatives is because they are well provided for.

"It is my wish that my nephew, Fred Watkins Evans, and my brother-in-law, Ernest Redman, jointly administer my estate without bond and without accounting to any courts."

It will be observed that the testatrix bequeaths to named relatives and servants certain sums of money, "the residue to go to my nephew, Fred Watkins Evans, to handle as he sees fit during his lifetime, and the balance to go to his daughters, Ann and Frances Evans."

For this nephew, Fred Watkins Evans, it is contended, with the support of the executor, that (1) he is bequeathed a life estate coupled with a power of disposition so unlimited that a fee or absolute estate vests in him and the limitation over to his children is void; or (2) in the alternative, that he takes a life estate with a qualified power of disposition during his lifetime contingent upon his needs, wishes or desires, the balance remaining at his death to go to his named children.

The Chancellor was of opinion that Fred Watkins Evans was vested with a life estate only, with the right to use and consume only the income therefrom, but with unlimited authority to sell, transfer and convey and pass title to any and all of the real and personal property passing to him under the will, free from any obligation to account therefor, but with the obligation to keep invested the proceeds and hold same for the benefit of the

remaindermen. These are the issues presented on this appeal by the Executor and Evans.

██ Whatever may have been the rule laid down by our older cases, and invoked here for appellants, under which a life estate was converted into a fee by a provision for unlimited disposition, this rule "is now abrogated by statute," as we said in *Mauk* v. *Irwin*, 175 Tenn. 443 at page 447, 135 S. W. (2d) 922, 923; this reference obviously being to Code provision 7603, appearing again as 8093, reading as follows:

*"First taker's unexercised power of disposition, effect of.*—When the unlimited power of disposition, qualified or unqualified, not accompanied by any trust, is given, expressly, in any written instrument, to the owner of any particular estate for life or years, legal or equitable, such estate is changed into a fee absolute as to right of disposition, and rights of creditors and purchasers, but subject to any future estate limited thereon or executory devise thereof, in event and so far as the power is not executed or the property sold for the satisfaction of debts during the continuance of the particular estate."

And so GREEN, C. J., in *Magevney* v. *Karsch*, 167 Tenn. 32, at page 54, 65 S. W. (2d )562, at page 570, 92 A. L. R. 343 remarked that, "This rule, however, has now been circumscribed by the provisions of section 7603 of the Code of 1932, repeated in section 8093." . And see *Parker* v. *Milam*, 166 Tenn. 266, at page 273, 61 S. W. (2d) 674, at page 676, where it was said that even where an unrestricted power of disposition is given, "the limitation over would not be void under the provisions of the new Code," citing the above sections.

(It should be noted that the wills under consideration in the *Mauk* and *Magevney Cases, supra,* had been executed and probated prior to the enactment of the Code

of 1932 and disposition of these cases was, therefore, not affected by this statute.)

██ If then there is to be found on the face of this bequest of a life estate to Evans, either expressed, or by necessary implication, a power of disposition, "qualified or unqualified," in so far as the power is not executed, or the property sold for debts during the continuance of the life estate, the estate will pass to the remaindermen named therein upon the death of the life tenant. This is the conclusion compelled by the Code provisions above cited, and is also in harmony with our holdings in a number of cases, in which we found coupled with a life estate a qualified or contingent power of disposition conferred on the life tenant. See *Williams* v. *Coldwell* 172 Tenn. 214, 111 S. W. (2d) 367, 114 A. L. R. 941; *Mauk* v. *Irwin*, *supra*, in which older cases are cited. Also *Jones* v. *Mc-Murrey*, 25 Tenn. App. 47, 150 S. W. (2d) 713.

There remains open for our consideration, therefore, only the alternative insistence of appellants, that there is coupled with this life estate either an unlimited power of disposition, or such as confers the right upon this life tenant to convert to his own use, or that of the testatrix's brother, William W. Evans, referred to in the will and made a charge upon the life tenant, such portions of the property passing to him under the will as he "sees fit during his lifetime"—finds needful or desirable —the balance remaining at his death to pass to the remaindermen.

It is clear that the primary objects of this old lady's bounty were this nephew Fred and his two daughters and we are impressed that, if her will is to be construed as limiting the use and enjoyment of the property she bequeathed them to the income only throughout the life expectancy of her nephew, which runs for many years,

then not the nephew and father only, but these girls will be deprived of the benefit of this bounty at the very period when they will most need it for their education and support in a fashion befitting their station and prospects. This testatrix was doubtless aware of the shrinking purchasing power of the dollar, the rising tide of taxes and the limited yield of all safe income bearing securities. When these factors are given effect, the spendable income of this nephew for himself, his daughters and this invalid uncle, would be wholly inadequate. All of these, the particular objects of the testatrix's bounty, are thus cramped and restricted in the use of this estate bequeathed to them, while the years pass. No one is benefited by such a limitation upon the use of this estate. These girls, when they come to receive this bequest, if the father lives out his expectancy, will certainly have long passed the years when they needed it for their education, etc., and could most have enjoyed it. It is hard to conceive that it was the intention of this testatrix to bring about this static state of affairs and hold off from the full enjoyment of her bounty both this nephew and his daughters, so long as he should live and until the girls, if then living, are aged.

With this appraisal in mind of the result to the primary beneficial objects of the testatrix of a construction which limits all use of the estate to the income for probably many years, we examine the language of this residuary clause. A bequest is made to this nephew of the residue of this estate, "to handle as he sees fit during his lifetime; and the balance to go to his two daughters, Ann and Frances Evans." A right to use, enjoy and consume the income and incidentally to conserve and protect the *corpus* by re-investment, when necessary, of income bearing personalty, exists without express words of author-

ity, so that, if this was all intended to be given him, expressions of the will authorizing the life tenant to "handle as he sees fit," and referring to "the balance" were unnecessary and unappropriate. It must have been the intention by these expressions to confer upon the life tenant greater and further power of use and consumption than he would have otherwise had.

The Chancellor gave to these expressions, particularly "to handle as he sees fit," coupled with the provision that neither bond nor accounting should be required, added meaning, holding that thereby the life tenant is empowered to sell, transfer and dispose of any part or parts of the estate, real and personal, and pass good title thereto to purchasers. We agree, but feel constrained to go further and hold that it was the intention that this life tenant might also, for his own use and benefit and that of the testatrix's brother, William, and of these daughters, encroach upon the *corpus* of the estate, "the balance" remaining at the death of the life tenant to pass to these daughters.

Indeed, adopting the narrower view of the phrase "to handle as he sees fit during his life time," which extends authority only to shifting and re-adjusting, collecting and re-investing without restriction, and free from all obligation of accounting in any manner to any court, as a practical result such a life tenant is left free to make absolute and unlimited disposition of any part or all of this estate coming into his hands. If one may do with securities *as he sees fit,* without legal responsibility for disposition, his power of disposition is in legal effect absolute. Such power of handling or use can hardly be distinguished from absolute power of disposition expressly conferred.

Perhaps the most significant expression on the face of this will supporting the view that it was intended that the life tenant might encroach upon the *corpus* is the reference following the provision authorizing Evans to handle, or use, this property "as he sees fit," to "the balance." It is impossible to avoid the deduction that Mrs. Jackson had in mind that in his handling or use of the estate a part of the principal or *corpus* would or might be consumed by him, thus leaving a "balance." It is as though she had said to this favorite nephew, "take all that remains of my estate, after payment of my debts and the legacies I have specified, and do with it as you see fit; 'the balance' remaining when you die I want to go to your daughters." The Century Dictionary defines "balance" as "A surplus; a remainder; the rest; the residue; what remains or is left over; as, he bequeathed the *balance* of his estate to A. B.; the balance of a meal."

In more than one case this Court has recognized the significance of the use of the term "balance" or its equivalent, "remaining." In *Downing, Executor,* v. *Johnson,* 45 Tenn. 229, it was "balance" that was held to imply a power to encroach on the *corpus*; and in *Eaton* v. *Nashville Trust Co.;* 145 Tenn. 575, at page 581, 238 S. W. 865, at page 866, GREEN, J. says: "The gift over of the 'remaining money' also *forces the implication* that George M. Spottswood was to have an unlimited power of disposition when the money came into his hands." (Italics inserted.) *Meacham* v. *Graham* 98 Tenn. 190, 200, 39 S. W. 12, and *Bradley* v. *Carnes,* 94 Tenn. 27, 27 S. W. 1007, 45 Am. St. Rep. 696, are cited.

Under the sub-heading "Implied power to sell," many cases are annotated in 2 A. L. R. 1310, 27 A. L. R. 1387, and 69 A. L. R. 835, construing the phrase, following a devise of a life estate, for the use of the life ten-

ant, with a limitation over of "what remains," or "the remainder," as implying a power of disposition, and as indicating a purpose to vest in the remaindermen what is left only. We are unable to make any material distinction between the phrases "the remainder" or "what remains" and "the balance." Both alike clearly imply a power conferred to encroach upon the *corpus*. It is only the balance, that is, what remains of the estate, that the testator passes by the will to the remainderman. For example, in *Young* v. *Hillier,* 103 Me. 17, 67 A. 571, 125 Am. St. Rep. 283, where the will gave to the wife all the testator's estate "for her use during life" and at her death "whatever may remain of said estates" to a daughter, it was held that the use given the wife extended to a sale of the real as well as the personal property, as, otherwise, there was no practical significance in the use of the word "remain" in this connection. So here, the use of the phrase "the balance" is meaningless, unless it connotes what is left after the life tenant has handled or used the estate during his lifetime "as he sees fit." Illustrations might be multiplied indefinitely.

Counsel for appellees, citing Webster, defines "handle" as "to touch; to feel with the hand; to hold, take up, move or otherwise affect with the hand; to use the hands upon." These definitions referring to physical handling are quite obviously not applicable here. He proceeds more appropriately: Also, "to have pass through one's hands; to buy, sell; to deal or trade in." Other definitions given by Webster have a broader meaning, more consonant with the likely intent here, such as, to use, manage, direct the course of. And when effect is given to the significance of the added words, "as he sees fit," and to the provisions waiving bond and accounting, and the bequest over of "the balance" only, we think it

inescapable that it was the intention of the testatrix that this nephew might encroach upon the *corpus* at least to the extent of his needs and those of this invalid brother and these daughters.

The decree of the Chancellor is modified and a declaratory judgment will be entered here in accordance with the foregoing opinion.