Elias SKOVRON and Georges Skowron, Complainants-Appellants,

v.

(Paula Bogacki Reichert, Intervening Petitioner, Appellant),

**THIRD NATIONAL BANK IN NASHVILLE and W. Raymond Denney, etc., Defendants-Appellees.**

Court of Appeals of Tennessee, Middle Section.

Aug. 31, 1973.

Certiorari Denied by Supreme Court, May 6, 1974.

Gracey, Buck, Maddin & Cowan by John K. Maddin, Jr., Nashville, for complainants-appellants.

Waller, Lansden, Dortch & Davis, by Lawrence Dortch, Nashville, for intervening petitioner.

Stanley M. Chernau, Nashville, for defendants-appellees.

## OPINION

TODD, Judge.

The complainants, Elias Skovron and Georges Skowron, and intervening petitioner, Paula Bogacki Reichert, have appealed from the Chancellor's decree interpreting the will of David Bogatzky contrary to the contentions of appellants.

David Bogatzky died without issue on March 26, 1932, leaving a substantial estate subject to his will, the material text of which was as follows:

"ITEM 2. I will, devise and bequeath to my wife Lilian Bogatzky all of my property of every nature and kind, real, personal and mixed, wherever the same may be located, or found, to have and to hold for and during the full term of her natural life, with right to use and employ, all of said property and the income and profits arising or in any way derived from same, for her use and benefit, except as provided in Item 3 hereof, and upon her death, such of said property as may remain, shall go to and become the property of my brother, Hyman Bogatzky, (written in Polish language Bogacki) of Golin, Kaliska, Poland, and his children, in equal shares or interests; and in event any of his children should be dead, leaving child or children surviving them, then such surviving child or children, shall take the share of such deceased parent.

In event however, that my said brother, Hyman Bogatzky should die before this will becomes operative, then in such event the bequests in his favor, under Items 2 and 3 hereof, shall go and enure to the benefit of his said children and the child or children of any deceased child of the said Hyman Bogatzky, in equal shares or interests, the child or children of a deceased child of said Hyman Bogatzky, to represent and take the share of the deceased parent.

"ITEM 3. I further will and direct my said wife Lilian Bogatzky (Hereinafter named as my Executrix) shall during the term of her natural life, beginning one month after my death, pay to my said brother, Hyman Bogatzky, for the equal use and benefit of himself and his children, and the child or children of any deceased child or children of said Hyman Bogatzky, share and share alike, the sum of $100.00 per month, to be divided equally among said beneficiaries and the estate hereinbefore under Item 2 hereof, willed and bequeathed to my said wife Lilian Bogatzky, is expressly charged with said monthly payment or allowance

$100.00. Said Payment of $100.00 per month to be made as hereinbefore provided by my said wife, Lilian Bogatzky, shall during the lifetime of my said brother Hyman Bogatzky be made to him for the equal division and distribution to himself and the other beneficiaries; and upon his death, such payment shall thereafter, during the life of my said wife, be made to such individual beneficiary as may be designated by the other beneficiaries, to receive and make distribution of said sum of $100.00 per month among those entitled thereto thereunder.

"ITEM 4. I further will and direct that my said wife Lilian Bogatzky shall have, and is hereby expressly given the right, authority and power, from time to time, when in her judgment, such is best, to sell any of the personal property herein given and bequeathed to her, particularly bonds, stocks or other securities, and in event of any such sale, the proceeds arising therefrom shall be reinvested in other like personal property, such as bonds and securities of recognized stability and value, to be held, used, enjoyed and applied by my said wife, as hereinabove provided in Items 2 and 3 hereof; however, my said wife shall not be liable for any loss resulting from error of judgment on her part, nor shall the purchaser of any such property be in any way obligated to see to the reinvestment of the proceeds of any such sale."

■ Appellants first complain that the Chancellor erred in holding that the foregoing will vested in Lilian Bogatzky an absolute estate in the property of David Bogatzky without limitation over to remaindermen.

The conclusion of the Chancellor was based principally upon the case of Marsh v. Porch, 35 Tenn.App. 62, 242 S.W.2d 691 (1951) wherein the will consisted of a letter which read in part as follows:

" . . . I am leaving this statement as a general guide (as near as I can tell now) as to how I would like for my estate to be disposed of. I want my wife who has at all times been good and kind to me to have all my personal property—and real estate located in Waverly, Tenn. also, my one half interest in the Luten, Jim Turner and Arkansas farms for and during her natural life. If thought best convert the real estate into some other class of property. After her death I desire that this property go in equal parts to Mildred Marsh, Mary Joe and Christine Turner. . . ." 35 Tenn. App., pp. 65, 66, 242 S.W.2d p. 692.

In that case, the Trial Judge found:

"I am of the opinion that a construction of the letter written by the late C. W. Turner on January 23, 1926 and filed as Exhibit to the petition in this cause is determinative of all matters involved. This is especially so when construed in the light of all the surrounding circumstances, the settlement of C. W. Turner's estate by his widow on June 2, 1941, and the previous settlement and agreement made between the parties relative to the real estate.

"First, considering the construction to be placed on that portion of the letter wherein personal property was mentioned, I am of the opinion that the statement 'I am leaving this statement as a general guide (as near as I can tell now) as to how I would like for my estate to be disposed of. I want my wife, who has at all times been good and kind to me, to have all my personal property and real estate located in Waverly, Tennessee,' in the absence of any thing further conveyed to his wife his personal property and real estate in Waverly without any limitations. Any other constructions would in my opinion be inconsistent with all the facts disclosed in this record. The certified photostatic copy of the record from the Department of Finance and Taxation discloses that a large portion of the personal estate in the name of C. W. Turner belonged to and was the separate (sic) of Mrs. Nell

C. Turner. There is an affidavit by Mrs. Turner and one by the cashier of Citizens Bank of Waverly, both being signed and the affidavit of Mrs. Turner being sworn to. Furthermore the following statement in the will that *'also my one-half interest in the Luten, Jim Turner, and Arkansas farms for it during her natural life,'* only adds additional property to Mrs. Turner with the additional property being *limited to her use during her life*. These statements in Mr. Turner's will, or the letter that was probated as a will, show definitely that he wanted her taken care of out of his estate and to hold that he did not give her the personal property without limitations would, in fact, be a finding that he did not take care of her out of his estate." 35 Tenn.App., pp. 70, 71, 242 S.W.2d, p. 694. (Emphasis Supplied)

This Court concurred in the finding of the Trial Judge that, *under the circumstances of the case,* the personalty and real estate in Waverly were received by the widow without limitation, but that the other real estate was received by the widow *for life only.*

A further study of the will in Marsh v. Porch, supra, discloses that the testamentary sentence was divided into two parts, divided by the word, "also." The first part stated, "I want my wife . . . to have all my personal property—and real estate located in Waverly, Tennessee." The second part stated, "also my one half interest in the Luten, Jim Turner and Arkansas farms for and during her natural life." The first part was held to vest an absolute estate in the property described therein, and the second part was held to vest only a life estate in the property described therein.

The will in the present case states, "I will, devise and bequeath to my wife . . . all of my property . . . to have and to hold during the full term of her natural life . . ." There is no interruption or change of subject from the words "will, devise and bequeath" to the words "during . . . her natural life." The natural meaning and legal effect of the words of the subject will is "Unto my wife, I will, devise and bequeath a life estate in all of my property."

Appellees insist that the initial words, "I will, devise and bequeath to my wife . . . all of my property . . ." creates a fee absolute estate which cannot be diminished by the subsequent words, "to have and to hold for and during the full term of her natural life." In support of this insistence, appellees cite Smith et al. v. Reynolds et al., 173 Tenn. 579, 121 S.W.2d 572 (1938). In that case, the first paragraph of the will read as follows:

"I, Matt B. St. John, this April 12th, 1933, being of sound mind do hereby will and bequeath to my wife, Agnes Kerwin St. John, my entire estate with both real and personal property inclusive, except my medical library, which I leave to Dr. L. B. Snapp of Bristol, Tennessee."

After a second, immaterial paragraph, the third and last paragraph states:

"At Agnes Kerwin St. John's death this estate is by my wish returned to my nearest blood kin. This revokes previous will."

The Supreme Court held that the first paragraph created an absolute estate which could not thereafter be limited by the third paragraph.

In the present case, the limitation was stated in the course of creating the estate, indeed the kind and character of estate is stated in the same breath as the creation of the estate.

Appellees rely upon Item III of the will, supra, charging the estate willed to his wife with the monthly $100.00 payments to his brother. Said charge is neither consistent nor inconsistent with absolute or limited estate in the widow. Either estate was subject to such a charge, and there is no reason why the deceased should not

have felt the need to assure that his widow would make required payments to his brother during her lifetime, whether her estate be absolute or for life.

Appellees next rely upon Item IV of the will, supra, giving her the power of sale of any personal property bequeathed to her, as indicating the intent to create in her an absolute estate. Said Item IV also provides, however, that:

"in event of any such sale, the proceeds arising therefrom shall be reinvested in other like personal property, such as bonds and securities of recognized stability and value, to be held used, enjoyed and applied by my said wife as hereinabove provided in Items 2 and 3 hereof."

The foregoing quotation indicates an intent to limit the power of disposition to a mere power of conversion to other forms of property to replace that which was sold and to be held for the purposes set out in the will. The remainder of Item IV confirms this interpretation as it relieves the widow of liability for misjudgment in reinvestment. Without a valid reservation of an enforceable remainder interest, the widow would at all times have dealt with her own property without accountability to anyone, and there would have been no occasion for such exculpatory provision in her favor.

It is true, as insisted by appellees, that the opinion in Marsh v. Porch, supra, states that an unlimited power of disposition indicates an absolute estate. However, as already pointed out, under the circumstances of said case, the Supreme Court held only *part* of the estate to be absolute and the remainder to be limited to life. Furthermore, Marsh v. Porch does not take into account Section 64–106, T.C.A., quoted below.

Appellees cite Cox v. Sullins, 181 Tenn. 601, 183 S.W.2d 865 (1944). In that case, the pertinent part of the will read as follows:

"Fourth: I give, devise and bequeath to my husband Dr. Thos. ap. R. Jones, my Government Bonds, stock in Appalachian Mills, Standard Knitting Mills, Eldridge Imp. Co., Cherokee Spinning Co., Fidelity-Bankers Trust Co. Any of these bequests that are still in his possession at his death must be given to my nephew David Sullins." 181 Tenn., p. 603, 183 S.W.2d, p. 865.

The Supreme Court said:

"(1, 2) Since, according to the stipulation of facts, David Sullins died before the testatrix and left no issue, any interest he might have taken under Item Four of the will had lapsed when the will became effective at the death of the testatrix. (Citing authorities) There is here, therefore, no question of the validity of a remainder over, or of an executory bequest. The only question is whether Dr. Jones became the absolute owner of the securities in Item Four, or took only a life estate in them. *The language of the first sentence of the bequest is unconditioned and all-inclusive*: 'I give, devise and bequeath by my husband Dr. Thos. ap R. Jones, my Government Bonds, stock in Appalachian Mills, Standard Knitting Mills, Eldridge Imp. Co., Cherokee Spinning Co., Fidelity-Bankers Trust Co.' We can conceive no language which would more clearly and fully give Dr. Jones the absolute ownership of these securities, and the words, 'Any of these bequests that are still in his possession at his death,' merely fortify a conclusion that he was being given an absolute power of their disposition." 181 Tenn., p. 605, 183 S.W.2d, p. 866 (emphasis supplied)

Apparently, the decision in Cox v. Sullins was influenced by at least two factors, mentioned in the foregoing quotation, viz:

(a) The bequest to the remainderman had lapsed by death of the remainderman without issue prior to the death of the testator. (Sec. 32–306 T.C.A. preserves

lapsed legacies only where the deceased legatee dies with issue)

(b) The absolute estate was created in the *first* sentence of the paragraph. The attempted limitation over occurred in a subsequent sentence.

Repeating: The limitation in the present will was not in a separate sentence, but in the very part of the very sentence which created the estate.

Appellees also cite Haskins v. McCampbell, 189 Tenn. 482, 226 S.W.2d 88 (1850) wherein the will stated:

"Second,—After the payment of debts and funeral expenses as aforesaid, *I give, devise and bequeath to my wife, Jannie Haskins, all my person (sic) property,* except a small lot of jewelry now in my possession as family 'keepsakes.' This jewelry I desire turned over to my brother, T. W. Haskins, at the death of my said wife, to be delivered to his children when they become of legal age.

"Third,—I desire and also direct that my said wife remain undisturbed in our home and retain a life estate in the entire tract of land on which the home or residence is situated so long as she may live.

"Fourth,—*I desire and hereby direct that my real estate and whatever may remain of my estate,* after the death of my said wife, go to my said brother, if he survive me, otherwise, to my next of kin, according to the laws of inheritance. . . ." 189 Tenn., p. 485, 226 S.W.2d, p. 90

As in the case of Smith v. Reynolds, supra, Haskins v. McCampbell is distinguishable from the present case because the absolute estate in *Haskins* was created without reservation in one paragraph and the limitation over was stated in a subsequent paragraph; whereas, in the present case, the limitation of the estate was stated in the creation and definition.

Appellees further cite Bradley v. Carnes, 94 Tenn. 27, 27 S.W. 1007 (1897), wherein the will stated:

"I give and bequeath to my wife, Sarah J. Carnes, all the remaining property, both personal, & real for her special comfort, benefit and support. If she thinks it advisable, she may sell & convey the right of the land. If anything remains at her death it shall go into the hands of my Executor *and shall & divide equally in half of (sic) the* proceeds between my wife Sarah J. Carnes, brothers & sisters, and the other half shall be divided equally between my own, G. W. Carnes, brothers & sisters with the exception of the heirs of Martha B. Hill and I will them one dollar & no more." 94 Tenn., pp. 27, 28, 27 S.W., p. 1007.

In Bradley v. Carnes, the first sentence created an absolute estate, unless the words, "for her special comfort, benefit and support," imply a limitation. The Court held that they did not. In the present case, the limiting words are, "for and during the full term of her natural life" which are considerably different from the limiting words in Bradley v. Carnes.

Appellees attach significance to the fact that the charge for $100.00 monthly payments to a brother was placed in a subsequent portion of the will, rather than in the clause creating the estate of the widow. The latter arrangement may have been better draftsmanship, but perfect draftsmanship is not required to produce a valid will or clause thereof.

Jones v. Jones, 225 Tenn. 12, 462 S.W.2d 872 (1971), is somewhat, but not precisely in point. In *Jones* the question was not the estate held by the widow, or the disposition to be made of property after her death, but whether the widow had the power to convey an absolute estate during her lifetime. The opinion of the Supreme Court states:

"The complainants have perfected their appeal to this Court alleging as error (1)

the Chancellor erred in disallowing the amended bill, and (2) the Chancellor erred in his finding that Dovie Jones was given an unlimited power of disposition under the terms of her husband's will.

.   .   .   .   .   .

"The second issue as to whether under the terms of the will Dovie Jones had a power of disposition so that she could convey an absolute fee under Tennessee Code Annotated 64–106, calls for the construction of the will of the late R. M. Jones.

.   .   .   .   .   .

"/2/ For the construction of a will of the nature of the case at Bar no hard and fast rule can be laid down for each case is a law unto itself. Many authorities have been examined and the prevailing view is that the court in such cases will keep an eye singled toward what was the meaning or desire of the testator at the time the will was executed. That is the test, and if there are provisions in the will that tend to conflict, we must look to that provision which in our opinion more nearly conveys the testator's wishes and reconcile or disregard the conflicting portions. The primary intent must override the secondary one if either must fail.

.   .   .   .   .   .

"Under authorities hereinabove recited and especially on the basis of the authority of Redman v. Evans, supra [184 Tenn. 404, 199 S.W.2d 115], it is concluded that this will gave the life beneficiary, Dovie Jones, a power of disposition so that she could convey an absolute fee under Tennessee Code Annotated 64–106." 225 Tenn., pp. 15, 16, 17, 462 S.W.2d, p. 873

Section 64–106 T.C.A., referred to above, reads:

"*64–106. Estate with unlimited power of disposition.*—When the unlimited power of disposition, qualified or unqual- ified, not accompanied by any trust, is given expressly, in any written instrument, to the owner of any particular estate for life or years, legal or equitable, such estate is changed into a fee absolute as to right of disposition, and rights of creditors and purchasers, but subject to any future estate limited thereon or executory devise thereof, in event and so far as the power is not executed or the property sold for the satisfaction of debts during the continuance of the particular estate. /Code 1932, Secs. 7603, 8093./"

At this point, it should be noted that, prior to the enactment of Section 64–106 T.C.A., supra, the rule in Tennessee was:

If the first taker is given an estate in fee or for life coupled with an unlimited power of disposition, the fee or absolute estate vests in the first taker, and the limitation over is void." Bradley v. Carnes, supra.

The preceding strict rule generally known as "The Rule in Shelley's Case," was not in effect in Tennessee on the date of probation of the subject will on March 21, 1932, because, on January 1, 1932, the Code of 1932 became effective containing therein Sections 7603, and 8093, now T.C.A. Sec. 64–106.

The resolution of the present controversy cannot be based upon the holding of Bradley v. Carnes, supra, which was modified by statute prior to the probation of the will herein. Abernathy v. Adams, 31 Tenn.App. 559, 218 S.W.2d 747 (1948). Rather, the decision must rest upon the question of whether the words, "for and during her natural life" are severable from the words, "I will devise and bequeath to my wife," occurring in the same sentence.

In Overton v. Lea, 108 Tenn. 505, 68 S.W. 250 (1902), the will stated:

"And as to all the rest, residue and remainder of my estate . . . I give, devise, and bequeath the same unto my mother, Rebecca Salmons Lea, to and

for her own use and benefit absolutely, provided that she does not marry again; but if she marries again, I give, devise, and bequeath the same from the time of her remarriage to my cousin, Overton Lea, Jr., son of Overton Lea, Sr., of Nashville, Tenn.

"In case my mother, Rebecca Salmons Lea, dies during my lifetime, or in case she dies intestate, or in case she gives or bequeaths to my sister, Bessie Kelly, or her husband, or any descendant of hers, or any one bearing the name of Kelly, any portion of my estate, I give, devise, and bequeath the said rest, residue, and remainder of my estate and effects, whatsoever and wheresoever, both real and personal, whether in possession, reversion, remainder, or expectancy, unto the said Overton Lea, Jr., to and for his own use and benefit absolutely." 108 Tenn., p. 539, 68 S.W., p. 258

The Supreme Court said:

"The words 'to and for her own use and benefit absolutely,' do not imply an unlimited power of disposition, because the language is immediately coupled in the same sentence with the proviso, 'that she does not marry again.'

.    .    .    .    .    .

"The words are all to be read together. . . . The very words and sentence which creates the estate limit it, and make it a conditional determinable fee." 108 Tenn., pp. 546, 547, 68 S.W., p. 260

In Jones v. McMurrey, 25 Tenn.App. 47, 150 S.W.2d 713 (1941), the will of deceased stated:

"Secondly—I give to my wife Annie McMurrey, all my property both personalty and real that I have at my death to be used as she see fit, as long as she lives. (but I advise that the money be loaned with two security and none of it loned to anny myne and her Kinsfolk.)" 25 Tenn.App., p. 49, 150 S.W.2d, p. 714 This Court held:

"/2, 3/ The testator thus expressed an intent to make two gifts, (1) to give all his property to his wife 'to be used as she see fit, as long as she lives,' and (2) to give what property should be left at her death equally to the four named; and he empowered his executor to carry out these gifts. It is clear if he had intended his wife should take the entire estate in all the property absolutely to the exclusion of the others named, he would have made no gift over to them at all. But it is equally clear he did intend she should take all the property 'to be used as she see fit, as long as she lives.' Does this right in her to all the property 'to be used as she see fit, as long as she lives,' include also an unlimited power to dispose of it and defeat the gift over? Or it is only a right to take the rents, income and corpus for her personal use during her lifetime and thus to consume all of it, if necessary, for her maintenance and support? We think the intent of the testator was that she should have the right to use all the property, the rents, income and the corpus, for her support and maintenance during her life, and if at her death any of it was left it should go to the remaindermen. That is to say, the will vested in her a life estate coupled with the power to dispose of all the property only if and when she might find it necessary for her personal use. Such a limited or qualified power of disposition did not enlarge the life estate into a fee simple." (Citing authorities) 25 Tenn.App. pp. 49, 50, 150 S.W.2d, p. 714

In Young v. Insurance Company, 101 Tenn. 311, 47 S.W. 428 (1898), the will stated:

"I give, devise, and bequeath my estate and property, real and personal, as follows: That is to say my farm, located on Mission Ridge, and described and bounded as follows: (here follows description) I also give, devise, and bequeath all my personal property and effects. I also devise and wish my wife,

S. J. Young, to have full and complete control,—to transfer and reinvest or otherwise dispose of the property, or any part of the same, as she may wish. I further desire that at the decease of my wife the property as above described, or the proceeds thereof, shall become the property of my daughter, Essey May Young." 101 Tenn., p. 313, 47 S.W., p. 429

and the Supreme Court said:

"Taking the whole instrument together, while it is indefinite and informal, in not naming the devisee, it was clearly a devise to the wife, with remainder to the child,—with power in the mother, however, to sell and reinvest. Upon this branch of the case we need not dwell. This is not in conflict with Bradley v. Carnes [10 Pickle, 27], 94 Tenn. 27, 27 S.W. 1007, as is argued." 101 Tenn., p. 314, 47 S.W., p. 429

In Waller v. Martin, 106 Tenn. 341, 61 S.W. 73 (1901) the will stated:

"I give and bequeath to my daughter, Mary E. Omohundro, my farm near the grade in the twenty-third civil district of Wilson County, Tennessee /describing it/, to have and to hold during her natural life, and at her death to go to her legal heirs. Now I intend, and hereby will and direct, that all the lands I give to my daughters shall be under her control, and free from the debts of her husband; but, should any of them at any time desire to sell their lands, they may do so, provided they reinvest the proceeds in other lands, taking a deed to her and her legal heirs, with the same provisions contained in this will; and I hereby appoint my son Joshua C. Logue, trustee, to see that this part of my will is strictly complied with." 106 Tenn., pp. 343, 344, 61 S.W., p. 74

and the Supreme Court said:

"It is insisted that such a power of disposition is given to Mrs. Omohundro by this will as must vest in her an absolute estate in the land. We think this position is not well taken, since the power of disposition is restricted to a sale for reinvestment on precisely the same terms under which the original property is held. It is not an unlimited power of disposition, and the case is not brought within the rule laid down in Bradley v. Carnes [10 Pick., 27], 94 Tenn. 27, 27 S.W. 1007." 106 Tenn., p. 344, 61 S.W., p. 74

Except for the provision of a trustee to monitor compliance with the restrictions on alienation, the foregoing will is strikingly similar to that of the present case in that it uses the phrase, "to have and to hold during her natural life," and the litigants apparently conceded that the estate was created as a life estate. It was insisted that the life estate was enlarged by subsequently granted power of disposition, under Bradley v. Carnes, supra, which is no longer applicable.

In Carson v. Carson, 115 Tenn. 37, 88 S.W. 175 (1905) the will stated:

"Secondly. I give, devise, and bequeath to my husband, W. M. Carson, the tract of land upon which I now reside, containing one hundred and sixty-five acres, (describing same) and at his death I direct that after his funeral expenses and just debts are all paid, the remainder of said tract to go to . . . the Board of trustees of the Cumberland Presbyterian Church in the United States of America, . . ." 115 Tenn., pp. 39, 40, 88 S.W., p. 175

and the Supreme Court held:

"We are of opinion that, under this clause of the will, W. M. Carson does not take an absolute or unlimited estate, such as will defeat a valid devise over.

"We are of opinion, therefore, that the chancellor was in error in holding that W. M. Carson took the land mentioned in the second item in fee simple and absolutely, but he should have held that he

took only a life estate, with remainder over." 115 Tenn., p. 44, 88 S.W., p. 177.

In Williams v. Coldwell, 172 Tenn. 214, 111 S.W.2d 367 (1937), the will provided:

"I give, desire (devise) and bequeath to my wife, Sarah Ann Terry, all of the property of whatever nature of which I may die seized and possessed, after all my just debts shall have been paid, (describing property) to her full and free use and benefit, during her natural life, with all profits, interest and gains arising and accruing on said property.

"The said Sarah Ann my wife shall have the full and free and unlimited control and management of all of said property after my death, . . .

"Now if at the death of my wife, the said Sarah Ann, there shall be anything left of my property, then I desire that two-thirds of the same shall be equally divided between (naming remaindermen) . . . ." 172 Tenn., pp. 218, 219, 111 S.W.2d, p. 368.

It was apparently conceded that the above langugage did not create an absolute estate in the widow. The dominant question was the extent of the widow's power to convey. The Supreme Court said:

"Our conclusions are that the power of disposition conferred by the will upon Sarah Ann Terry was a limited power, in that the real estate could be sold only for consumption of proceeds of sale by her, as for conversion into personalty for the convenient or desirable use and enjoyment by her of her life estate, without enlargement of her life estate in the property; that she held the proceeds of sale in trust for the ultimate beneficiaries, subject to her own use thereof under the terms of the will; that R. H. Dowell took a valid title, in fee, to the lands in question by virtue of the two deeds executed by Sarah Ann Terry conveying the same to him." 172 Tenn., p. 225, 111 S.W.2d, p. 371.

In Hair v. Farrell, 21 Tenn.App. 12, 103 S.W.2d 918 (1936), the will provided:

"I will and devise that I give and bequeath to my present beloved wife all the lands, tenements, and real estate that I own at my death including (describing property) and all of said property, is willed by me subject to limitations and conditions as follows:

"(A) That she is to have the absolute control of during her natural life all the lands I own at my death, so as to cultivate and have cultivated, and receive the full benefit of the rents and profits derived therefrom, to be used by her for her own support and maintenance." 21 Tenn.App., p. 15, 103 S.W.2d p. 920.

This Court said:

"/1, 2/ It is an elementary rule of will construction that the intention of the testator will be given effect unless it contravenes some rule of property or public policy. We think the will in question reflects the clear intention of the testator to make ample provision for the proper support and maintenance of his wife during her lifetime. This intention is expressed in several items of the will. He also makes it clear that she is to have the full and unlimited use and control of the property and the management of the same, both real and personal, for her lifetime, but with the express restriction that such use of said property shall be for her proper support and maintenance and for no other purpose or use.

.     .     .     .     .     .

"This intention by the testator is clearly reflected by the terms and provisions of the will." 21 Tenn.App., p. 19, 103 S.W.2d p. 922.

Under the pronouncements of the foregoing authorities, and under the clear intent of the testator as revealed by his entire will, the widow Lilian Bogatzky, received a life estate in all of the property of the deceased with power of disposition during her lifetime. This conclusion is at vari-

ance with that of the Chancellor, supra, and with respectful deference to him.

The first complaint of appellants is sustained, and the holding of the Chancellor will be revised accordingly.

The decision of the Chancellor, adjudging that the widow, Lilian Bogatzky, received an absolute, fee simple interest in her husband's estate, enabled him to pretermit a number of thorny secondary questions. The reverse conclusion by this Court leaves said questions for consideration and disposition.

A brief statement of family history will serve as a background of the questions to be considered.

The deceased, David Bogatzky, and his wife, Lilian Bogatzky, had no natural children. David Bogatzky had one brother, Hyman Bogatzky (Bogacki), a resident of Poland, who died before David, leaving several children, of whom only two survived World War II. A son, Icek Bogacki, now deceased, is represented in this litigation by his only daughter, Paula Bogacki Reichert. A daughter, Soja Skowron, now deceased, is represented in this litigation by her two sons, Elias Skovron and Georges Skowron.

Upon the death of David Bogatzky, his widow, Lilian Bogatzky, qualified as executrix of his estate and served as such until final settlement and discharge on December 17, 1937.

On April 9, 1940, Lilian Bogatzky adopted Elias Skowron, grandson of Hyman and grand-nephew of David.

On March 19, 1954, Icek Bogacki executed an instrument purporting to "release, relinquish and forever discharge any and all claims which he has or may have against the estate of David Bogatzky, deceased, or against Lilian Bogatzky, and does specifically release and disclaim any claim which he has or may have against the estate of David Bogatzky, deceased, or against the estate of Lilian Bogatzky, following the death of the said Lilian Bogatzky."

On June 15, 1964, Elias Skovron and Third National Bank became co-conservators of the estate of Lilian Bogatzky and continued as such until her death on December 21, 1966.

Upon the death of Lilian Bogatzky, Third National Bank and W. Raymond Denny became co-executors of her will. Said will contains eighteen specific bequests, of which the following are material:

"Edgar H. Bauman one hundred (100 shares of stock of the National Life & Accident Insurance Company, of Nashville, Tennessee, together with any declared stock dividends thereon since the date of this Will.

. . . . . .

Dr. Thomas Frist, of Nashville, Tennessee, one hundred (100) shares of stock of the National Life and Accident Insurance Company, fifty (50) shares of stock of The Texas Corporation, all my shares of stock of the Third National Bank in Nashville, and all my shares of stock in Coca Cola Company that I may own at the time of my death, together with any declared stock dividends thereon on all of the above stocks bequeathed, from the date of this Will."

After specific bequests, the residue of the estate is disposed of as follows:

| | | |
|---|---|---|
| (a) Georges Skowron | 30% |
| (b) Paula Bogacki Reichert | 35% |
| (c) William David Epstein | 15% |
| (d) National Jewish Hospital | 20% |

Said will also provided:

"Elias Skovron is a grandnephew of my late husband. He was brought to this country from Poland by me and I later adopted him, and through these years I have made very substantial gifts to him, both in securities and money, and as he has through these years been amply provided for by me, I have omitted him as a beneficiary herein."

The remaining issues relate to the rights of the beneficiaries of the will of Lilian Bogatzky as against the claims of the remaindermen under the will of David Bogatzky. As to the beneficiaries of specific bequests, the issue relates to whether the specific property was subject to the will of Lilian Bogatzky or was held by her as life tenant only with remainder to the remaindermen under the will of David Bogatzky. As to the rights of the residual legatees, the issue is how much or what part of the assets held by Lilian Bogatzky was subject to her will, and how much or what part of said assets were held by her as life tenant only, subject to the remainder provisions of the will of David Bogatzky.

On this subject, the appellants assign as error that:

"The trial court erred in failing to find that the will of David, even if giving Lilian the power to use principal as well as income, nevertheless did not give her the power to make inter vivos or testamentary gifts."

■ As to the power of the widow to defeat by her will the remainder interests created by her husband's will, there can be little doubt. The will of David Bogatzky speaks effectively in the words, "for and during her natural life," which create a life estate. It could hardly be contended that the owner of a bare life estate has any power to make testamentary disposition of the remainder. The power to sell or convert the assets during lifetime does not include the power to dispose of assets by will. Thompson v. Turner, 186 Tenn. 241, 209 S.W.2d 25 (1948)

The case of Leach v. Dick, 205 Tenn. 221, 326 S.W.2d 438 (1959) involved a deed which recited:

"This conveyance is executed to second parties, J. E. Dick and wife Ella Dick with the right to transfer, sell, convey, assign or encumber as they see fit with fee simple to go to J. E. Dick if Ella Dick dies before he dies, and if J. E. Dick dies before Ella Dick dies, a life estate to vest in Ella Dick for the rest of her natural life and on her death to go to the heirs at law of J. E. Dick in fee simple." 205 Tenn., p. 223, 326 S. W.2d, p. 439.

The Supreme Court held that Ella Dick was a life tenant only, that a taking by eminent domain was not tantamount to a sale under the testamentary power of disposition, and that the named remaindermen were entitled to share in the proceeds of the condemnation.

■ The power to make inter vivos gifts is likewise controlled by the terms of the will of David Bogatzky. The power of disposition, as set out in Item 2, supra, is "with right to use and employ . . . for her use and benefit . . . ." Such power, as set out in Item 4, supra, is, "to sell . . . proceeds . . . shall be reinvested in other like personal property . . . to be held, used, enjoyed and applied . . . as hereinabove provided . . . ." Nothing in the quoted portions of said will confers any power of disposition by gift. The power of disposition extends only to (a) "use and employ . . . for her use and benefit" and (b) "to sell" (for conversion to like property).

In 51 Am.Jur.2d, Life Tenants and Remaindermen, Section 63, p. 291, is found the following text:

"It is a general rule that a life tenant who is given the power to consume or anticipate the corpus of the estate if necessary for his support, maintenance, or comfort has no right or power to dispose of all or part of such corpus by a gift inter vivos. . . ." 51 Am.Jur.2d, p. 291

The foregoing text is supported by a number of authorities, including annotations in 2 A.L.R. 1243, 27 A.L.R. 1381 and 69 A.L.R. 825.

In the case of Brown v. Brown, 213 Iowa 998, 240 N.W. 910 (1932), it was held

that where a widow receives by will all of her husband's property for her use and benefit during her natural life, with full power to sell, convey and dispose . . . to invest and reinvest . . . and to use income and proceeds thereof for her maintenance, care and support, the widow is without power to make any gift of any property, income or proceeds.

The insistence of appellants, that Lilian Bogatzky had no power to dispose of property received by her under the will of David Bogatzky, either by will or inter vivos gift, is sustained. This decision will naturally activate and make relevant the issues of what inter vivos gifts and testamentary gifts of Lilian Bogatzky involved her own property, as to which she had unlimited power of disposition, and what involved property received from her husband as to which she had no power of disposition by gifts or will.

As to this issue, the Clerk and Master was directed to hear proof and report on a number of evidentiary facts, however the facts as reported by the Clerk and Master do not conclusively determine the ultimate facts of the controversy under discussion. An example of facts yet to be determined is as follows:

During the lifetime of Lilian Bogatzky, what gifts were made by her out of assets received by her under the will of David Bogatzky or derived therefrom?

The answer to the foregoing question depends upon (a) factual information, (b) inferences therefrom, and (c) legal principles applicable to said facts and inferences. Upon remand, (a) and (b) will address themselves to the Master on reference and to the Chancellor on motion to confirm the Master's report, (c) is a proper area for discussion in this opinion.

■ At the death of her husband, Mrs. Bogatzky was the owner of some assets in her sole and separate name. Property held with husband as tenants by the entireties and insurance on his life became her sole estate upon his death. As to these assets, clearly belonging to Mrs. Bogatzky, so long as she continued to own them, she had the right to make inter vivos gifts. Such of these assets as belonged to her at her death were subject to her testamentary power; i. e., could be disposed of by will, *unless* she became liable to remaindermen by unauthorized gifts of property subject to their interests, and the claims of remaindermen required the application of such sole and separate property for satisfaction.

■ There were other assets in existence at the death of David Bogatzky as to which the evidence of ownership is uncertain. It will be necessary for the finder of fact to determine the ownership of such assets from the available information and reasonable inferences to be drawn therefrom. Such inferences may point to sole ownership by either spouse, or joint ownership. In the event of the latter finding, an estate by the entireties may be found, which would result in absolute ownership by the widow after the death of her husband.

Assets which were the sole property of David Bogatzky at his death passed under his will to his widow for life only, and remaindermen would be entitled to same at her death *unless consumed* by her for her own benefit under the terms of the will. Any such assets converted to other forms would be subject to the same rule. Here arises the difficulty of identifying the resultant holdings as having their origins in the assets of the testamentary life estate. The executors insist that the remaindermen have the burden of proof that any particular asset or fund originated in or was derived from the assets of testamentary life estate. The evidence shows that the widow failed to segregate and keep separate the life estate assets from her sole and separate assets. This failure of the widow places an impossible burden upon the remaindermen, for the needed information was available to the life-tenant and not the remaindermen. Under these circumstances,

the executors who represent the widow are not in a position to profit from the failure to produce that evidence which their testator failed to record and preserve.

The remaindermen are not to be penalized for the failure to preserve information. Neither should the estate be arbitrarily or unduly penalized by severe application of rules applicable to trustees who commingle trust funds with their own.

Rather, the issue should be determined from a consideration of all available information and the inferences reasonably to be drawn therefrom. Of some assistance will be the inference reasonably deducible from the circumstances that all assets not consumed in livelihood or gifts continued in some form, and that, subject to such use and gifts, and increments from income, the proportion of sole and separate assets to life-estate assets would remain approximately the same.

Here arise two serious interrelated questions; i. e., the ownership of income derived from life-estate assets, ergo the ownership of assets acquired through such income, and the source from which the widow's expenses were paid.

In Hair v. Farrell, 21 Tenn.App. 12, 103 S.W.2d 918 (1936), it was held that where the estate for life is limited to necessary support and maintenance, the remaindermen are entitled to the unexpended income received during the lifetime of the life tenant. To the same effect is Emert v. Blair, 121 Tenn. 240, 118 S.W. 685 (1908).

In Harris v. Alderson, 36 Tenn. (4 Sneed) 251 (1856) it was held that, under a trust provision that "use and increase thereof should be taken care of for the express use and benefit of" certain beneficiaries, was intended for the "joint maintenance" of such beneficiaries.

In Jones v. McMurrey, supra, the words, "to be used as she sees fit so long as she lives" were construed to mean the right to use all the property, the rents, income and

the corpus *for her support and maintenance during her life.*

The wording of the will in the present case was:

"with right to use and employ all of said property *and the income and profits* arising or in any way derived from same *for her use and benefit. . . ."* emphasis supplied

The foregoing is deemed to have conferred upon the widow the right and power to apply income and profits to her *present use* and *present benefit,* and not the power to accumulate such income and profits for gifts, inter vivos or testamentary. As a result, such parts of the income and profits of the life-estate property as were *not consumed* by the widow in providing for her own keep and comforts remained a part of the estate reserved for the remaindermen at her death.

It will be for the finder of fact to determine the monetary source used by Mrs. Bogatzky to provide for her needs. In view of the aforementioned intermingling, this decision will be difficult, but not impossible. Certain separate bank accounts kept by her will be of some assistance; and, if necessary, the finder of fact may resort to inferences based upon her proven conduct or practices on other occasions. There is no basis for applying absolute presumptions which one side or the other must overcome. Rather, the resolution of this fact issue should be upon the basis of proven facts, reasonable inferences, and common sense. In the absence of evidence or circumstances indicating otherwise, the finder of fact would be justified in indulging an inference that the widow, a woman of financial astuteness, would use a fund provided for her rather than her own funds.

Appellants insist that, because of the commingling of estates by the widow, the burden is placed upon her estate to identify the assets belonging to her, failing which,

all must be presumed to be the residue of her husband's property in which she enjoyed only a life estate. This insistence is based upon the hypothesis that a life tenant is a trustee for the remaindermen.

■ It is true that a life tenant in some respects occupies a position of trust toward remaindermen. However, the relationship is more one of quasi-trustee. Vaden v. Vaden, 38 Tenn. (1 Head) 444 (1858); King v. Sharp, 25 Tenn. (6 Humph.) 55 (1845). The term "trustee" has been used more as an analogy in order to apply *certain principles* of trusteeship in reaching an equitable result. It is not considered that all of the rules of trusteeship, including that regarding commingled funds, are applicable to life tenants.

Appellees cite 51 Am.Jur.2d, Life Tenants and Remaindermen, Sec. 281, p. 572, which is supported only by Robb v. Berryman, 215 Md. 161, 137 A.2d 135 (1957). In said case, the headnote quoted in Am. Jur.2d is:

> "Where widow, who was given a life estate with unlimited power to use, consume and dispose of husband's estate, had *no other source of income other* than assets owned by her at time of husband's death and estate left by her husband, award to executor of widow's estate, of total assets established as belonging to her individually and awarding of remainder to remaindermen under husband's will was proper." 137 A.2d, pp. 135, 136

However, neither the words nor the substance appears in the text of the opinion, which states:

> "As we have held that Mrs. King could not accumulate the income from the life estate and expend the corpus of Mr. King's estate, and the above figures show that she consumed all of the income from, and a part of the principal of, the life estate, it follows as a necessary consequence that the chancellor was

correct in the amount that he decreed was distributable to the remaindermen." 137 A.2d, p. 139

Thus it is seen that Robb v. Berryman supports appellant's insistence only to the extent that an analogous result was reached by the finder of fact under the particular circumstances of the case.

■ Appellants do insist, correctly, that the estate of Lilian Bogatzky should be liable to the remaindermen to the extent of any inter vivos gifts made out of the property in which they had a remainder interest. King v. Sharp, 25 Tenn. (6 Humph.) 55 (1845).

■ Appellant, Paula Reichert, insists that the instrument signed by Icek Bogacki on March 19, 1954, was not effective to release, surrender or assign his remainder interest under the will of David Bogatzky. It will be remembered that the will of David Bogatzky conferred two rights upon Hyman Bogacki and his descendents (including Icek Bogacki and his daughter, Paula Reichert). These rights were:

(a) Participation in the $100.00 monthly payments required by the will, and

(b) Participation in the division of the remainder of the estate of David Bogatzky after the death of his widow.

At the time of said release instrument, Icek Bogacki had become entitled to total monthly payments of $8,500.00, of which $3,500.00 had been paid, leaving a balance of $5,000.00 accumulated and unpaid. $5,000.00 was the amount paid as consideration for said release. Under these circumstances, a release of claims "against the estate of David Bogatzky, deceased . . . Lilian Bogatzky . . . or the estate of Lilian Bogatzky . . ." should not be construed to be a surrender, release or assignment of the remainder interest created by the will of David Bogatzky.

Insofar as the other remaindermen might profit from the surrender or release of the remainder interest of Icek Bogacki, the question is moot, for complainants and Paula Reichert have compromised and settled any conflicting claims between themselves.

Insofar as the estate of Lilian Bogatzky might benefit from an assignment to her of the remainder interest of Icek Bogacki, it appears that his remainder interest was not subject to assignment. Hobson v. Hobson, 184 Tenn. 484, 493, 201 S.W. 659 (1946). At the time of said release, the persons to be entitled to the remainder of the estate of David Bogatzky were not determined. See text of will, supra.

The release of March 19, 1954, will therefore have no effect upon the claims of Paula Reichert to the remainder of the estate of David Bogatzky.

Another problem presented by the briefs on appeal is represented by the inter vivos gifts made by Lilian Bogatzky to the complainant, Elias Skovron. To the extent that such gifts were made out of the sole and separate estate of Lilian Bogatzky, same are completed and final, and no refund of same or credit against the claims of Elias Skovron may be asserted by the executors. However, to the extent, if any, that such gifts to Elias Skovron exceeded the sole and separate estate of Lilian Bogatzky, and thereby encroached upon the estate of David Bogatzky, the donee would be under a duty to refund or otherwise account for such excess.

Appellants further insist that some judgment should be rendered herein in consideration of possible death taxes which may be imposed upon the remaindermen as a result of the manner in which the estate of David Bogatzky was handled by his widow. Such application seems to be premature, since no such imposition or the amount thereof is shown. However, the remand of this case will be without prejudice to the right of appellants to assert such a claim.

Appellants urge this Court to make a final factual ruling based upon the Master's report as confirmed by the Chancellor. Said report contains voluminous exhibits without sufficient findings of fact upon which judgment might be rendered in this Court. Upon remand, a further reference will be in order to establish the following facts:

(a) Corpus of estate of David Bogatzky at his death subject to remainder provisions of his will. $

(b) Income, increase, profit or other increments to said estate from the death of David Bogatzky to the death of Lilian Bogatzky $_____
Total $

(c) Amount of corpus and income of estate of David Bogatzky spent by Lilian Bogatzky after his death for her use and benefit. $_____

(d) Remainder subject to claims of remaindermen under will of David Bogatzky. $

(e) *Corpus of sole and separate* estate of Lilian Bogatzky immediately after death of David Bogatzky. $

(f) Income, increase, profit or other increment on separate estate of Lilian Bogatzky from death of David Bogatzky to death of Lilian Bogatzky. $_____
Total $

(g) Amount of corpus and income of separate estate of Lilian Bogatzky consumed by her for her use and benefit. $

(h) Amount of corpus and income of separate estate of Lilian Bogatzky given away by her after death of David Bogatzky. $_____

(i) Total $_____

(j) Balance (deficit) in separate estate of Lilian Bogatzky at her death. $

(k) If (j) shows a deficit, list names of donees, and amount by which each of their gifts exceeded the estate of Lilian Bogatzky and encroached upon the estate of David Bogatzky.

_____ $
_____ $
_____ $
_____ $_____

(*l*) Total Depletion $

Other issues which must be resolved by reference to the Clerk and Master are:

(m) Shares of National Life stock owned by Lilian Bogatzky at the death of David Bogatzky. _____

(n) Shares of National Life stock acquired by Lilian Bogatzky after the death of David Bogatzky by profits from shares shown in (m), above, and/or by purchase with funds of her sole and separate estate independently of any income from her life estate in assets of David Bogatzky estate._____

(o) Total _____

(p) Shares of above National Life stock sold or given away by Lilian Bogatzky after the death of David Bogatzky. _____

(q) Remainder of National Life shares belonging to sole and separate estate of Lilian Bogatzky at her death. _____

(as previously stated, the total shown in (q) above, will be subject to the provisions of the will of Lilian Bogatzky unless required to supply deficit in remainder estate of David Bogatzky or other prior needs of the estate of Lilian Bogatzky).

The Clerk and Master should be required to report the same information [(m), (n), (o), supra] as to stock of The Texas Corporation, Third National Bank in Nashville and Coca Cola Company, with the same limitations upon effect of bequests in the will of Lilian Bogatzky.

Upon the receipt and confirmation of the Response of the Clerk and Master to the foregoing issues, the Chancellor should be in a position to render a final decree upon the issues herein.

The decree of the Chancellor is reversed. The cause is remanded for further proceedings consistent with this opinion. The costs of this appeal are taxed against the estate of Lilian Bogatzy, deceased. The Trial Court costs will be adjudged on remand.

Reversed and Remanded.

SHRIVER, P. J., and PURYEAR, J., concur.